**CARTER COAL CO., Inc., v. NELSON.**

No. 4196.

Circuit Court of Appeals, Fourth Circuit.

Aug. 6, 1937.

Alvah H. Martin, of Norfolk, Va., for appellant.

D. Arthur Kelsey, of Norfolk, Va. (Kelsey & Jett, of Norfolk, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and Henry H. WATKINS, District Judge.

SOPER, Circuit Judge.

A tract of land containing 76 acres, located at Portlock near the city of Norfolk, Va., and well equipped with buildings, railroad siding, unloading pits, etc., for the storage of coal, was acquired by the Carter Coal Company, defendant in the District Court, at a reasonable price through the efforts of J. Craig Nelson. Failing to obtain what he deemed to be adequate compensation for his work, he brought this suit and the jury found the value of his services to be $4,000. From the judgment for that amount based upon the jury's verdict this appeal was taken. The appellant complains: (1) That the verdict was so excessive that it was an abuse of discretion on the part of the court to overrule its motion for a new trial, and (2) that the admission over its objection of certain evidence as to the value of the property constituted prejudicial error.

It is properly conceded that for the purposes of this appeal we must accept as true the evidence offered on the part of the plaintiff. He was a resident of Norfolk, an experienced coal operator, and the vice president of a corporation which had the exclusive agency for the sale of the output of four coal mines on the Norfolk & Western Railroad. He knew that the defendant was seeking a place for the storage of coal in tidewater Virginia, and that the Portlock Yards were admirably suited to its purpose and could be acquired for $8,000, or possibly less. He brought these facts to the attention of the defendant, arranged for its representatives to go to Norfolk, inspected the property with them, and pointed out its advantages with which they were immediately and favorably impressed. The plaintiff told them that he could buy the property for $8,000, and would turn it over to them at that figure on condition that he be given storage space in the yard free of charge for 65,000 tons of coal for a period of a year, with privilege of renewal from year to year as long as he desired; and on further condition that he be given a retainer at a salary of $200 to $250 per month for organizing and operating a general coal storage business for the defendant on the property. Pending final acceptance of this proposal by the defendant, the plaintiff secured an option on the property for $8,000, mailed it to the president of the defendant company in New York, and also sent a letter pointing out the advantages of the property. Later, while he was in New York, he was assured by the employees of the defendant that his proposition would be accepted and the next day

was instructed to exercise the option, which he did.

After a second visit to the property with an officer of the Coal Company, the option was taken up, the purchase price was paid, and a deed of conveyance of the land to the Coal Company was executed. After the contract of sale had been made, the plaintiff, at the request of the defendant and in the belief that he was performing services for it under a contract of employment, sought information as to the switching charges on railroad cars between the steamship piers and the coal yard, and advised the defendant as to the steps to take to secure a satisfactory rate. His services in this respect were rendered during the months of January and February, 1935. Later in February he learned that the Coal Company would not conform with the agreement it had made with him and after fruitless attempts during the next eight months to settle the controversy, the pending suit was brought.

The District Court, without objection on the part of the defendant, instructed the jury that as the contract between the parties had not been reduced to writing it was not enforceable under the statute of frauds, and hence no damages could be awarded to the plaintiff for the breach of the defendant's promise to give the plaintiff free storage space in the coal yard as well as a salaried position; but that if the jury should find that it was the intention of the parties that the defendant would compensate the plaintiff for his services in obtaining and turning over the option, then the jury should find a verdict for the plaintiff for such sum as they should find from all the evidence was the reasonable value of the services; and if the jury should further believe from the evidence that the plaintiff was employed by the defendant to organize the storage operations at the yard, and perform services pursuant to such employment, and that it was the intention of the parties that he should be paid for such services, then the jury should include in the verdict such additional amount as they might find from the evidence that the services were reasonably worth, taking into consideration the amount and character of the services, the responsibility imposed, the labor, time, and trouble involved, the character and importance of the matter involved, and the skill and experience required for the performance of the services.

During the course of the trial one George T. McLean was permitted to testify, over the objection of the defendant, that the fair market value of the property at the time of its acquisition by the Coal Company was $30,000. McLean was a resident of Portsmouth, Va., actively engaged in the Norfolk area in the building material, concrete and building construction business, and had contracts for building municipal water and sewer systems and doing grading and foundation work. He was familiar with the value of trackage and the cost of constructing the same and a short time prior to the incidents in this case, had bought mill property equipped with trackage on the Portsmouth side of the river on the railroad. He had made a personal inspection of the Portlock property in the previous year, with a view of operating it. Both properties were on the outskirts of the city of Portsmouth although on different sides of the river. His estimate was based on a value per acre of $250; a value of trackage at one-half its cost; and the cost per cubic foot of the construction of concrete pits, which were subject to little depreciation. The items, acreage, trackage, and pits totaled the sum of $28,000; and the total estimate of $30,000 excluded machinery and was based only on the value of the land, buildings, concrete pits, and trackage. This evidence was objected to on the ground that as the witness had not inspected the property during the year preceding the sale, his opinion was valueless; and on the further ground that the witness had not properly qualified himself to give an opinion. With respect to the value of the property, the judge charged the jury that this was only one element in the case and was material only insofar as it threw light, if any, on what was the reasonable value of the services rendered.

The defendant's theory that the verdict was so excessive that it was an abuse of judicial discretion to let it stand is based on the assertion that the only measure of the value of the plaintiff's services proposed in the evidence was the testimony of a real estate broker produced by the defendant who said that the commissions of such a broker for effecting such a sale would not exceed ten per cent of the purchase price, or $800. It is contended that when a suit is brought to recover for services on a quantum meruit, the reasonable value of the services must be determined with the

654

aid of witnesses competent to express an opinion on the subject, and cannot be left to the jury to be determined according to their uninformed judgment and discretion; and if no such testimony is produced, the recovery is limited to nominal damages. For authority the defendant refers to 8 R. C.L. 652, 17 C.J. 1023, 71 C.J. 162, and cases cited. Hence it is said that the verdict in this case should not have exceeded $800.

■ We need not inquire into the limitations of this rule or whether the services of the plaintiff in this case were of such a nature that the jury in the absence of expert guidance was incompetent to appraise them, for it cannot be said that the record is devoid of evidence bearing upon the value of the plaintiff's work. The oral contract between the parties, which was received in evidence, was an admission of substantial value by the defendant, and although not conclusive as to the amount, was relevant as showing the value placed thereon by the parties to the suit. Williston on Contracts, § 536; Restatement of Contracts, § 217 (2); Clark v. United States, 95 U.S. 539, 543, 24 L.Ed. 518; General Paint Corp. v. Kramer (C.C.A.) 68 F.(2d) 40; Crocker v. United States, 240 U.S. 74, 81, 36 S.Ct. 245, 60 L.Ed. 533. The evidence indicates that it was through the plaintiff's peculiar skill and experience that the only available property suited to the defendant's needs in Norfolk was discovered and secured, and it is a fair inference that it was on this account that he was promised not only a position at a monthly salary but free storage for 65,000 tons of coal annually. Since it was shown that at the contemplated rate of 25 cents per ton a substantial revenue over and above expenses might reasonably be expected, it cannot be said that the jury had no data upon which to base its verdict.

■ Moreover, it should be borne in mind that we are not dealing specifically with the strict rules of law that should be applied in determining the measure or restitution for performance of unenforceable contracts, but rather with the question whether the verdict should be upset upon a motion for a new trial when without objection on the part of the defendant, the judge instructed the jury that a verdict if found for the plaintiff should represent the reasonable value of the services rendered. The established rule in the federal appellate courts is that they have no power to review the action of a trial court in granting or denying a motion for a new trial for error of fact. Such a matter lies wholly within the discretion of the trial court and it is only when there is an abuse of such discretion that its action is reviewable. Manifestly, it is only in the clearest case that such a ruling should be disturbed, as where the mistake is so obvious that no reasonable basis for the action of the court can be discerned. There are many cases in which the appellate courts have refrained from disturbing the trial court's approval of an award of damages. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439, and cases cited. See, also Barnett v. Equitable Trust Co. (C.C.A.) 34 F.(2d) 916; United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379. In the pending case we have no difficulty in reaching the conclusion that there was no abuse of the discretion lodged in the trial court. There was not only abundant evidence to support the jury's finding that the plaintiff had rendered service to the defendant, but also to support the determination that the work performed by a man of expert knowledge and long experience was of substantial value.

■ Nor do we find error in the admission in evidence of the opinion of the witness McLean in regard to the value of the property. The testimony was clearly material in its bearing upon the reasonable value of the services rendered in the acquisition of the land, and was so limited by the charge of the court; and we cannot say that a man of the witness' business experience, familiar with the type of property involved, was not qualified to form an estimate of its value.

Affirmed.