**Ora Greene HUDSON, Administratrix of the Estate of Garland Hudson, deceased, Appellant, v. David LAZARUS, Samuel Juster and Calvin Juster, Appellees.**

**No. 11870.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 9, 1953.

Decided Nov. 24, 1954.

Petition for Rehearing Denied Dec. 15, 1954.

---

1. Dausuel v. Dausuel, 1952, 90 U.S.App.D.C. 275, 195 F.2d 774.

was in charge, to have someone drive him to work and bring the car back to be washed. Though Harris's permit to drive a car had been suspended, and Sorentino knew this, he directed Harris to make the trip. Harris asked Sorentino "Could I stop and get a sandwich?" and added "I haven't had any breakfast." Sorentino said "But make it snappy."

Juster drove the car, with Harris in it, less than half a mile and then left it in Harris's possession. Instead of returning to or even starting toward the service station, Harris drove off in a different direction. He was more than a mile from the station, and still going away from it, when he collided with Hudson. At the trial Harris explained that he was on his way to breakfast and there was no place near the service station where he could get breakfast.

Mr. David F. Smith, Washington, D. C., with whom Messrs. Dorsey K. Offutt and Jacob Stein, Washington, D. C., were on the brief, for appellant.

Mr. Robert E. Anderson, Washington, D. C., with whom Mr. Charles C. Collins, Washington, D. C., was on the brief, for appellees Samuel Juster and Calvin Juster.

Mr. Leroy S. Merrifield, Washington, D. C., a member of the bar of the Supreme Court of Minnesota, *amicus curiae*, appointed by this court.*

Before EDGERTON, WASHINGTON, and DANAHER, Circuit Judges.

EDGERTON, Circuit Judge.

On May 3, 1949 Garland Hudson was seriously injured by an automobile owned by appellees Juster and driven by Harris, an employee of appellee Lazarus's service station.

Calvin Juster, one of the appellees, was a customer of the station. On the morning of the accident he stopped there in the Juster car and asked Sorentino, who

Hudson was taken to Casualty Hospital and afterwards, because he was a veteran, to Bethesda Naval Hospital. There he was cared for without charge. On November 2, 1950 he filed this suit against the present appellees. He died April 7, 1951, leaving a widow and two sons. The widow was appointed administratrix and duly substituted as plaintiff. She is the present appellant.

█ October 31, 1952 the appellant sought to amend her complaint by adding a claim for wrongful death. Since suits for wrongful death must be brought within one year, D.C.Code 1951, § 16–1202, 31 Stat. 1394, the court rightly dismissed this claim. Pendency of an action for personal injuries does not toll the statute of limitations on a death claim.[1]

█ The court directed a verdict in favor of the Justers. We think this was right. There was no evidence tending to show that Juster was negligent in entrusting the car to Harris. The Financial Responsibility Act does not cover the

---

* Because the appeal against Lazarus is undefended and involves important questions, we appointed Professor Merrifield of the George Washington University Law School as *amicus curiae*. His scholarly report has been of great value to the court.

1. Baltimore & Ohio S. W. R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566.

217 F.2d—22½

case. The Act provides that one who drives a motor vehicle with the owner's express or implied consent "shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner." D.C. Code 1951, § 40–403, 49 Stat. 168. But the presumption continues only "until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission." Rosenberg v. Murray, 1940, 73 App.D.C. 67, 68, 116 F.2d 552, 553. Harris testified without contradiction that nothing was said between him and Juster about his getting breakfast. Juster testified without contradiction that he heard no conversation between Harris and Sorentino about getting breakfast. There was, then, uncontradicted proof that Juster consented only to Harris's driving the car back to the service station and did not consent to his going, or even stopping, for breakfast. Juster's consent perhaps extended, by implication, to driving back to the station by a more or less circuitous route. But when Harris collided with Hudson, he was not driving back to the station by *any* route. He was driving away from it. We agree with the District Court that he was clearly not driving with Juster's consent.[2]

The court limited appellant's verdict against Lazarus to the "pecuniary loss" Garland Hudson suffered in his lifetime.[3] In our opinion damages should have in-

cluded in addition (1) the value of all reasonably necessary medical and hospital services furnished without charge by Bethesda Naval Hospital; (2) an allowance for Hudson's disabilities caused by the accident; and (3) his probable future earnings during his life expectancy, discounted to present worth.

██ (1) In general the law seeks to award compensation, and no more, for personal injuries negligently inflicted. Yet an injured person may usually recover in full from a wrongdoer regardless of anything he may get from a "collateral source" unconnected with the wrongdoer.[4] Usually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted. Legal "compensation" for personal injuries does not actually compensate. Not many people would sell an arm for the average or even the maximum amount that juries award for loss of an arm. Moreover the injured person seldom gets the compensation he "recovers", for a substantial attorney's fee usually comes out of it. There is a limit to what a negligent wrongdoer can fairly, *i. e.*, consistently with the balance of individual and social interests, be required to pay. But it is not necessarily reduced by the injured person's getting money or care from a collateral source.[5]

2. When the court directed the verdict Calvin Juster had not yet testified. Until he testified, there was no positive proof that he did not overhear the conversation between Harris and Sorentino. But we need not consider whether it was error to direct a verdict in the absence of such testimony. The error, if any, became harmless when Calvin Juster testified, for the Justers were then, if not before, entitled to a directed verdict.

3. Counsel thereupon agreed on $5,909.40 for loss of pay from the date of the accident until death, $69.10 for Casualty Hospital, $15.00 for transportation to and

from the hospital, $10.00 for medical supplies, and $46.50 for ruined clothes. The court instructed the jury to award the total, $6,050, if they awarded anything. The verdict and judgment were for that amount.

4. Restatement, Torts (1939) § 920, Comment (e); McCormick, Damages § 90, pp. 323–4 (1935); Sedgwick, Measure of Damages § 67 (9th ed. 1920).

5. For a different view see James, Social Insurance and Tort Liability, 27 N.Y.U.L. Rev. 537, 544 et seq.

However it be rationalized, the "collateral source" principle has been applied in various situations. Receipt of money on an accident insurance policy does not reduce the damages the injured person may recover.[6] The same has been held with regard to hospitalization insurance.[7] And when medical and hospital services have been rendered gratuitously, or paid for by a third person as a gift to the injured person, he has usually been allowed to recover their value from the wrongdoer.[8]

The Maryland Court of Appeals recently held that an injured member of the Navy may recover from a negligent defendant the value of medical and hospital services rendered without charge by a naval hospital. The court said: "the majority of the cases hold that where hospital and medical services are furnished gratuitously to the injured party, he can recover the value of those services from the tort feasor. This seems to be the modern rule. Here also it might well be considered that medical and hospital services supplied by the Government to these members of the United States Navy were part of the compensation to them for services rendered, and therefore that by their service in the Navy they had paid for these." Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262, 266–267. The Court of Appeals for the Fourth Circuit has held that a claim adjuster's statement to a member of the Navy that, because he would get hospital care without charge, he could recover damages only for pain and suffering, was fraud justifying rescission of a release: "It is generally well settled that the fact that the plaintiff may receive compensation from a collateral source (or free medical care) is no defense to an action for damages against the person causing the injury." Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 1950, 183 F.2d 548, 550, 21 A.L.R.2d 266.[9]

We think the "collateral source" principle applies here. We see no reason to distinguish services rendered by a naval hospital to the veteran Hudson from services rendered by a naval hospital to a man still in the Navy. They are neither more nor less gratuitous,[10] and neither more nor less a part of the injured man's compensation for his service in the Navy,[11] in the one case than in the other.

6. Bradburn v. Great Western Ry. Co., L.R. 10 Exch. 1 (1874); Dempsey v. Baltimore & O. R. Co., D.C.E.D.Pa.1915, 219 F. 619; Campbell v. Sutliff, 1927, 193 Wis. 370, 214 N.W. 374, 53 A.L.R. 771; cases collected in 18 A.L.R. 683, 95 A.L.R. 577.

7. Gersick v. Shilling, 1950, 97 Cal.App.2d 641, 218 P.2d 583; and cases collected in 13 A.L.R.2d 355. Contra, Sedlock v. Trosper, 1948, 307 Ky. 369, 211 S.W.2d 147, 13 A.L.R.2d 349.

8. Denver & R. G. R. Co. v. Lorentzen, 8 Cir., 1897, 79 F. 291; Roth v. Chatlos, 1922, 97 Conn. 282, 116 A. 332, 22 A.L.R. 1554; Clark v. Berry Seed Co., 1938, 225 Iowa 262, 280 N.W. 505; and cases collected in 128 A.L.R. 686. Contra, Daniels v. Celeste, 1939, 303 Mass. 148, 21 N.E.2d 1, 128 A.L.R. 682.

9. Cf. Standard Oil Co. of California v. United States, 9 Cir., 1946, 153 F.2d 958, 963, affirmed, 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067.

10. Restatement, Torts § 924, Comment f, says "there can be no recovery for the value of services rendered gratuitously by a state-supported or other public charity". City of Englewood v. Bryant, 1937, 100 Colo. 552, 68 P.2d 913, and Di Leo v. Dolinsky, 1942, 129 Conn. 203, 27 A.2d 126, are to that effect.

11. A Veterans' Administration Regulation, 38 C.F.R., 1952 Supp., § 17.48(d), provides in effect that a veteran who may have a claim against a third person for negligent injury will not be treated without charge, to the extent of the third person's liability, and "will be requested to execute appropriate assignment" to enable the government to collect from the third person for the veteran's hospital care. Apparently the regulation was issued in reliance on 38 U.S.C.A. § 706 which provides that, under such limitations as the Administrator of Veteran's Affairs may prescribe, hospitalization and care for a non-service-connected injury are to be furnished to a veteran who "is unable to defray the necessary expenses therefor". Whatever effect, if any, the regulation might otherwise have here, it is irrelevant because it was not adopted until November 30, 1951, 38 C.F.R., 1952 Supp., § 17.48(d). This was after Hud-

**(2)** The Survival Act of the District of Columbia provides: "On the death of any person in whose favor or against whom a right of action may have accrued for any cause prior to his death, said right of action shall survive in favor of or against the legal representative of the deceased: *Provided, however,* That *in tort actions, the said right of action shall be limited to damages for physical injury except for pain and suffering resulting therefrom.*" D.C.Code 1951, § 12–101, 62 Stat. 487. (Emphasis added.)

It is not clear why the fact that the injured person is dead and the plaintiff is his legal representative should absolve the defendant from responsibility for the pain and suffering he inflicted on the deceased. When the sufferer himself is the plaintiff, it seems most unjust to restrict his compensation merely because the wrongdoer is dead and the defendant is his legal representative. But we must take the Act as we find it. It excepts "pain and suffering" in both cases.

Before the accident Hudson worked as a laborer, was in good health, and had no disabilities. After the accident he was stone deaf and could not walk without crutches. A man who cannot hear or walk because of an accident has a physical injury. Unless such disabilities are "pain and suffering", the Survival Act does not except them from the physical injury for which damages may be recovered by the legal representative of the injured person.

We think a disability is not, in itself, "pain and suffering". It is not within the ordinary meaning of those words and we see no reason to think Congress used the words in a special sense. A disabled man may or may not suffer pain. Even if he does, after his death his administrator cannot recover for his pain and suffering. But in our opinion his administrator may recover for his disabilities.

**(3)** Permanent loss of earning power is usually the chief economic harm caused by a permanent injury. If Hudson in his lifetime had recovered judgment in this action, his damages would have included an allowance for prospective loss of earnings during his normal life expectancy,[12] discounted to present worth,[13] and with such other adjustments as the facts may require.[14] When he died his right to these damages passed under the Survival Act to his administratrix, the present appellant, for the Act provides that the injured person's right of action for physical injury "shall survive * * * except for pain and suffering".

The Wrongful Death Act of the District of Columbia creates no pertinent exception to the broad terms of the Survival Act. Under the Wrongful Death Act damages are "assessed with reference to the injury resulting * * * to the spouse and next of kin" of the deceased and "shall not be appropriated to the payment of the debts or liabilities of such deceased person, but shall inure to the benefit of his or her family and be distributed to the spouse and next of kin * * *." D.C.Code 1951, §§ 16–1201, 16–1203, 31 Stat. 1394, 1395. Section 16–1201 contains a proviso "That no action shall be maintained under this chapter in any case when the party injured by such wrongful act, neglect, or default has recovered damages therefor during the life of such party." We need not consider whether some sort of converse implication might perhaps be derived from this proviso, or from the Wrongful Death Act as a whole, limiting damages under the Survival Act when there has been a recovery under the Wrongful Death Act. In the present case no action has been or can be maintained under the Wrongful

---

son's death. The record does not show that he executed an assignment. The United States has presented no claim against the appellant administratrix and made no effort to intervene in this suit.

12. I. e., life expectancy in the absence of the accident.

13. Vicksburg & Meridian Railroad Co. v. Putnam, 118 U.S. 545, 554, 7 S.Ct. 1, 30 L.Ed. 257.

14. Cf. Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 489–491, 36 S.Ct. 630, 60 L.Ed. 1117.

Death Act. We find no basis for an inference that Congress intended us, in these circumstances, to give less than full effect to the terms of the Survival Act. Double recovery for the same elements of damage should of course be avoided. But there is no possibility of double recovery in the present case.[15]

Decisions under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51, 59, are not applicable. Like the Wrongful Death Act, the Employers' Liability Act creates a new right of action, upon the death of the injured person, for the benefit of his next of kin; and like the Survival Act, it permits the injured person's own claim to be enforced after his death by his legal representative. But unlike the Survival Act, the Employers'

Liability Act *creates* the injured person's claim. As interpreted by the Supreme Court, this claim "is confined to his personal loss and suffering before he died".[16] Since the injured person has no broader claim, no broader claim on his behalf survives.[17] But the District of Columbia Code does not create the injured person's claim. His claim, which (except for "pain and suffering") survives, is the broad common-law claim for physical injury.

The case will be remanded so that the elements of damage we have discussed may be added to the present judgment of $6,050.[18] In other respects the judgment is affirmed.

Remanded.

**15.** The inter-relation of Wrongful Death Acts and Survival Acts is discussed in McCormick, Damages (1935) p. 337. Cf. Murray v. Philadelphia Transportation Co., 1948, 359 Pa. 69, 58 A.2d 323; First Nat. Bank in Greensburg v. M. & G. Convoy, Inc., D.C.W.D.Pa.1952, 106 F.Supp. 261.

**16.** St. Louis, I. M. & S. R. Co. v. Craft, 237 U.S. 648, 658, 35 S.Ct. 704, 706, 59 L.Ed. 1160.
"For an injury resulting in death, the act gives two distinct causes of action. One is to compensate the injured person for his loss and suffering while he lives. * * * The second cause of action is to compensate persons other than the injured employee for pecuniary loss suffered by them through the employee's death." Chicago, B. & Q. R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 162–163, 48 S.Ct. 73, 72 L.Ed. 216. Baltimore & Ohio S. W. R. Co. v. Carroll, 280 U.S. 491, 494, 50 S.Ct. 182, 74 L.Ed. 566.

**17.** Great Northern R. Co. v. Capital Trust Co., 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208.

**18.** Cf. Washington Gas Light Co. v. Connolly, 94 U.S.App.D.C. ——, 214 F.2d 254; Plank v. Summers, supra, 1954, 203 Md. 552, 102 A.2d 262, 267.