**Richard R. RAYFIELD, Appellant,**

v.

**Forrest LAWRENCE, Appellee.**

**No. 7537.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1958.

Decided March 3, 1958.

Braden Vandeventer, Jr., Norfolk, Va. (Vandeventer, Black & Meredith, Norfolk, Va., on the brief) for appellant.

Stanley J. Bangel, Portsmouth, Va. (Bangel, Bangel & Bangel, Portsmouth, Va., on the brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and STANLEY, District Judge.

STANLEY, District Judge.

This is an appeal from a judgment entered in the United States District Court for the Eastern District of Virginia, Norfolk Division, on a jury verdict against the defendant, Richard Rayfield, for personal injuries growing out of a collision between an automobile being operated by the defendant and an automobile being operated by one Thomas J. Briody, Jr., in which the plaintiff, Forrest Lawrence, was a passenger. Another sailor, James D. O'Neil, and a friend of Lawrence, was also a passenger in Briody's automobile and received serious injuries. O'Neil also brought suit against the defendant, and his suit was consolidated for trial in the District Court with the suit brought by plaintiff, since both involved a common question of law and fact. Both suits were appealed and argued in this court. Before the appeal was decided a stipulation of compromise in settlement of O'Neil's suit was filed with this court and the appeal was thereupon dismissed under Rule 23, 28 U.S.C.A., and in accordance with said stipulation of compromise and settlement.

The principal contention raised by the defendant relates to an instruction given the jury by the District Judge to the effect that if it found the defendant liable it could consider, among other elements of damage, the fair and reasonable value of the hospital and medical services rendered to the plaintiff at the Naval Hospital in Portsmouth, Virginia, even though plaintiff may not actually have expended any money for said hospital and

medical services. The contentions are also made that the District Judge should have submitted an issue of contributory negligence and that the verdict returned by the jury was excessive. There is no merit to any of these contentions.

At approximately 12:30 o'clock on the morning of May 26, 1956, Thomas J. Briody, Jr., a sailor in the United States Navy, left Kiptopeke Beach, Virginia, bound north on Route 13 towards Audubon Park, New Jersey. Plaintiff accompanied him as a passenger, sitting on the front seat beside Briody. As Briody proceeded north on Route 13, he followed a pick-up truck towing a house trailer. A short distance from the ferry terminal at Kiptopeke Beach, the lights on the rear of the trailer blinked and a hand signal was given, both indicating a left turn. As the truck-trailer ahead of the Briody car started turning to the left, Briody brought his car to a complete stop on the right side of the highway to give the truck-trailer an opportunity to complete its left turn. While parked on his right side of the highway, awaiting the turn of the truck-trailer, Briody took a pack of cigarettes from his shirt and put them over the sun visor and in so doing it was necessary for him to momentarily take his eyes from the highway. On returning his eyes to the road ahead, he witnessed an automobile, later determined to be driven by the defendant, Rayfield, in his right lane, which soon came into collision with his automobile.

Route 13 at the point of collision is a two-lane concrete highway with shoulders of some six to eight feet in width on either side, and runs in a north-south direction. The road into which the truck-trailer was entering runs west from Route 13. The speed limit on Route 13 in the area of the collision was 25 miles per hour, and Rayfield was mindful of this fact.

The state trooper testified that Rayfield stated to him that he was driving somewhere between 50 and 60 miles per hour immediately before the collision, and Rayfield testified at the trial that he was traveling at least 45 miles per hour.

Rayfield further testified that when he first saw the truck turning into his lane he applied the brakes of his automobile and swerved to the left side of the road in order to avoid a collision with the truck-trailer. He skidded his car 58 paces or 150 feet across the dry pavement and struck the Briody car with sufficient force to demolish his own vehicle. There was nothing in the weather conditions or otherwise to obstruct visibility. Rayfield testified that he possibly could have stopped on his right side of the highway before colliding with the truck-trailer had he been operating his automobile within the speed limit.

Lawrence had no ownership or control over the car in which he was riding. He had been a passenger for less than three minutes when the collision happened, during which time the speed of the Briody car had been between 10 and 15 miles per hour. O'Neil, the other passenger in the Briody car, testified that the smash came unexpectedly and without notice, stating all of a sudden he saw blinding headlights in front of the Briody car and then the crash occurred. Lawrence was unable to recall the details of the accident because of brain injuries he sustained.

At the time of the institution of these actions, both Richard Rayfield and Thomas Briody, Jr. were named defendants. Both defendants filed answers denying negligence but neither set up a counterclaim or cross-claim against the other. At the conclusion of the opening statements to the jury, the District Judge granted a motion dismissing the action as to the defendant Briody "on the ground no negligence has been stated by any counsel in their opening statement as to any act of negligence or possible act of negligence as to the defendant Briody." The plaintiff did not oppose the entry of this order, but the defendant Rayfield noted an exception to the ruling of the court. This exception by the defendant has been abandoned as he does not raise the point on appeal.

Lawrence suffered serious and permanent injuries as the result of the acci-

dent. He was admitted to the Portsmouth Naval Hospital shortly after the accident for the treatment of his injuries, and was confined to said hospital for 83 days. He sustained a cerebral concussion causing him to be unconscious for several hours following the accident. In addition, he sustained multiple lacerations of the scalp, forehead, face and the small finger of the right hand, requiring over 60 stitches to close his wounds. He also received fractures of the right radius and ulna, the two bones in his right forearm, and of the astragalus in his right foot, which is the bone in the ankle responsible for transmitting the weight of the body from the lower leg bones into the foot. His injuries were painful, but due to the head injury he received, he could not be given sedation because of possible brain injury, the extent of which was not known at the time. The fracture of his arm was treated by his arm being placed in a long arm cast and suspended in traction on the side of the bed, and the fracture of his ankle bone was treated by a short leg cast beginning just below the knee and including the foot. After his wounds healed, they left a three-inch scar starting on the right forehead and going into the scalp, another two-inch scar on the right forehead, a ¾-inch scar on the right upper eyelid, a 1½-inch scar on the right cheek, three scars on the right side of his face, and a one-inch scar across the nose, all of which are very disfiguring. The laceration of the scalp was so deep that it caused a small chip fracture of the skull. All these scars are of a permanent nature. He has considerable limitation of motion in his wrist which is permanent. He has tenderness of the ankle over the fracture site and pain in his ankle and foot which is permanent, with a 20% permanent loss of ability to turn his foot in and a 50% permanent loss of eversion because of the contracture of the finger and the injury to his wrist, Lawrence has a 32% permanent loss of grip in his right hand. The fracture to his astragalus in the foot and ankle has caused traumatic arthritis with resultant pain. This also caused spur formation which will get worse in the future. Law-

rence was a barber before the accident, and since the accident he has been unable to perform this work. As a result of the injury to his foot and wrist, his physician testified that he would be unable to do certain work, and if he continued barbering it would have to be in a limited capacity. He has since taken a job making from $15.00 to $25.00 a week less than his average earnings as a barber.

The principal contention of the defendant is that the District Court erred in allowing the jury to consider the reasonable value of the medical and hospital services furnished the plaintiff at the Naval Hospital in Portsmouth, even though plaintiff did not actually expend any money for such services. On this point, the District Judge instructed the jury as follows:

"The plaintiffs can only recover, if recovery be had, for damages which are shown by the evidence with reasonable certainty to be the direct result of the accident. But in this connection you may also consider the fair and reasonable value of the hospital and medical services rendered to the plaintiffs at the Naval Hospital in Portsmouth, even though said plaintiffs may not actually have expended any money for said hospital and medical services at the Government hospital. But you should only consider the value of such services as may have been rendered to the same extent as though they had been rendered to a civilian without the benefit of hospitalization at Government expense."

■ We think this is a correct statement of the law. In support of his contention that the charge is erroneous, the defendant cites Koons v. Nelson, 113 Colo. 574, 160 P.2d 367, and United States v. Gaidys, 10 Cir., 194 F.2d 762. These cases follow the substantive law of Colorado, and the defendant concedes that these cases represent the minority rule. We cannot follow these decisions as we are bound by the substantive law of Virginia, where the cause of action arose.

Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1118.

It is well settled in most jurisdictions including Virginia where this accident occurred, that an injured person may recover in full from a wrongdoer regardless of any compensation he may receive from a collateral source.

In Baltimore and Ohio R. R. Co. v. Wrightman's Adm'r, 29 Grat. 431, 70 Va. 431, 26 Am.Rep. 384, the court refused to allow the defendant in a wrongful death action to show that the deceased's widow had received certain life insurance benefits as the result of the death of her husband, which the defendant contended would be in mitigation of any damages which the plaintiff might recover. This case was cited with approval in Owen v. Dixon, 162 Va. 601, 175 S.E. 41, 43, wherein the Court said: "The reason for the rule is that the wrongdoer must compensate the injured party for the injury he has committed, without any reference to other compensation. In other words, if the defendant is liable in damages, the extent of his liability is not to be measured by deducting financial benefits received by plaintiff from collateral sources." This same principle is reaffirmed by the Supreme Court of Appeals of Virginia in the case of Johnson v. Kellam, 162 Va. 757, 175 S.E. 634, and the recent case of Burks v. Webb, 199 Va. 296, 99 S.E.2d 629. All the Virginia cases on the subject of "collateral payments" involve insurance benefits for which the plaintiff has paid a premium. The defendant contends that this court should make a distinction in cases where the "collateral source" payments resulted from some monetary payment by the plaintiff, such as the payment of insurance premium, and the instant case where the plaintiffs have in fact paid no actual consideration for the services they received. This contention is untenable. In Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 183 F.2d 548, 550, 21 A.L.R.2d 266, this court, speaking through Judge Dobie, laid down the following rule with respect to free medical

and hospital care furnished a sailor by the Government:

"The representation by Weston to plaintiff that because he was in the service he could recover only for pain and suffering was a false statement of the law. It is generally well settled that the fact that the plaintiff may receive compensation from a collateral source (or free medical care) is no defense to an action for damages against the person causing the injury. See Standard Oil Co. of California v. United States, 9 Cir., 153 F.2d 958, 963, affirmed 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, and the cases therein cited; note, 22 A.L.R. 1558; note, 18 A.L.R. 678–683; McCormick, Damages, 310 note 2, and 324 (1935); 15 American Jurisprudence, Damages, §§ 78, 200–201; Restatement, Torts § 920, Comment e. It is inconceivable that any member of the bar could have made a statement such as the one made by Weston without knowledge of its falsity or without acting with a reckless disregard for the truth."

The Sainsbury case has been followed by the United States Court of Appeals for the District of Columbia in Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344, certiorari denied Hudson v. United States, 350 U.S. 856, 76 S.Ct. 43, 100 L.Ed. 761, and Geffen v. Winer, 100 U.S. App.D.C. 286, 244 F.2d 375, and by the Maryland Court of Appeals in Plank v. Summers, 203 Md. 552, 102 A.2d 262.

In a well-considered opinion, which cites the Sainsbury and Plank cases with approval, the Court of Appeals for the District of Columbia, in Hudson v. Lazarus, supra, stated the modern rule, as applied to servicemen receiving free hospital and medical care, as follows [217 F.2d 346]:

"In general the law seeks to award compensation, and no more, for personal injuries negligently inflicted. Yet an injured person may usually recover in full from a wrongdoer regardless of anything he may get

from a 'collateral source' unconnected with the wrongdoer. Usually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted. Legal 'compensation' for personal injuries does not actually compensate. Not many people would sell an arm for the average or even the maximum amount that juries award for loss of an arm. Moreover the injured person seldom gets the compensation he 'recovers', for a substantial attorney's fee usually comes out of it. There is a limit to what a negligent wrongdoer can fairly, i. e., consistently with the balance of individual and social interests, be required to pay. But it is not necessarily reduced by the injured person's getting money or care from a collateral source.

"However it be rationalized, the 'collateral source' principle has been applied in various situations. Receipt of money on an accident insurance policy does not reduce the damages the injured person may recover. The same has been held with regard to hospitalization insurance. And when medical and hospital services have been rendered gratuitously, or paid for by a third person as a gift to the injured person, he has usually been allowed to recover their value from the wrongdoer.

"The Maryland court of appeals recently held that an injured member of the Navy may recover from a negligent defendant the value of medical and hospital services rendered without charge by a naval hospital. The court said: 'the majority of the cases hold that where hospital and medical services are furnished gratuitously to the injured party, he can recover the value of those services from the tort feasor. This seems to the modern rule. Here also it might well be considered that medical and hospital services supplied by the Government to these members of the United States Navy were part of the compensation to them for services rendered, and therefore that by their service in the Navy they had paid for these.' Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262, 266–267. The Court of Appeals for the Fourth Circuit has held that a claim adjuster's statement to a member of the Navy that, because he would get hospital care without charge, he could recover damages only for pain and suffering, was fraud justifying rescission of a release: 'It is generally well settled that the fact that the plaintiff may receive compensation from a collateral source (or free medical care) is no defense to an action for damages against the person causing the injury.' Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 1950, 183 F.2d 548, 550, 21 A.L.R.2d 266.

"We think the 'collateral source' principle applies here. We see no reason to distinguish services rendered by a naval hospital to the veteran Hudson from services rendered by a naval hospital to a man still in the Navy. They are neither more nor less gratuitous, and neither more nor less a part of the injured man's compensation for his service in the Navy, in the one case than in the other."

■■■ The Government has no cause of action against the defendant for the value of hospital and medical services rendered the plaintiff. United States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, and United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898. With the Government precluded from recovering of the tort feasor, the plaintiff is the only party who may recover under any theory. We

think, therefore, that defendant should not be able to escape liability for the medical and hospital expenses incurred by his negligence.

The defendant further contends that the District Judge should have submitted an issue of contributory negligence and that the verdict returned by the jury was excessive. These points are so lacking in merit as to warrant little discussion.

 So far as the record discloses, Briody, the driver of the car in which the plaintiff was a passenger, was a competent driver. He was on his proper side of the highway and completely stopped. He was an original defendant, but the action against him was dismissed, after counsel made opening statements, on the grounds that no act of negligence or possible act of negligence as to him had been stated. While counsel for the defendant objected to the ruling of the Court in dismissing the action as to Briody, he assigned no reason for his objection and the point has not been raised in this Court. There is nothing whatever in the record to indicate that the course of events would have been altered in the slightest by any conceivable action on the part of the plaintiff. He had no control over Briody or his automobile. The defendant's car came on so fast and the collision was so sudden that it would have been impossible for Briody to have taken any effective action at the suggestion of plaintiff to avoid the collision. It is equally clear that Briody, even if he had been looking at the highway ahead at all times after he stopped, could have done nothing to avoid the accident or minimize its effect. If it should be concluded that Briody was guilty of some act of negligence, such negligence would not be imputed to the plaintiff, who was a guest passenger riding with him, and who had no duty to direct or control the driver under the circumstances here involved. See Garst v. Obenchain, 196 Va. 664, 85 S.E.2d 207, and the cases therein cited, and Brown v. Parker, 167 Va. 286, 189 S.E. 339.

 It is too well settled to admit of argument that the granting or denial of a motion for a new trial in tort actions upon the ground that the damages awarded by the jury are excessive or inadequate is a matter resting in the discretion of the Trial Judge, and unless an abuse of discretion can be demonstrated this feature of the case is not reviewable on appeal. Lawrence received a verdict of $12,500, which was well within reason when considering the serious, permanent and disabling injuries he received. See Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Tallant Transfer Co. v. Bingham, 4 Cir., 216 F.2d 245; Carter Coal Co. v. Nelson, 4 Cir., 91 F.2d 651; Bainbrich v. Hammond Iron Works, 10 Cir., 249 F.2d 348. Clearly the Court did not abuse its discretion in refusing to grant a new trial on the ground that the verdict was excessive.

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.