Solomon L. MARGOLIS, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civ. A. No. 83–3210.

United States District Court, District of Columbia.

Dec. 20, 1985.

Stanley H. Kamerow, Kamerow & Kamerow, Washington, D.C., for plaintiff.

Charles H. Fleischer, Randall C. Smith, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Upon consideration of the pleadings and exhibits in this matter, the Court shall grant Defendant's motion in part and order the parties to appear for a hearing.

Plaintiff, Solomon Margolis, permanent conservator for Carol Lee Lally, brought this action for the benefit of Lally against Defendant Prudential Insurance Company of America seeking benefits under an insurance contract. Prudential insures Lally for medical expenses. The policy, No. I 0345108C, has been in effect since April 25, 1977, and there is no dispute as to the due issuance or in-force status of the policy. Plaintiff alleges that Defendant is liable under the policy for certain claims, discussed below, for Lally's medical, hospital, surgical and nursing care expenses incurred after July 31, 1980. Defendant denies liability for the particular charges and has moved for summary judgment as a matter of law, arguing that the expenses in question are not covered by the policy.

BACKGROUND

On March 10, 1980, Carol Lee Lally (the "Ward"), a 36 year old woman otherwise healthy, entered Sibley Memorial Hospital complaining of abdominal pain, fever and related symptoms. The Ward underwent surgery on March 10, 1980, which cured her abdominal condition. During the course of surgery, the Ward suffered cardiac arrest and cerebral hypoxia, resulting in brain damage and permanent coma. The Ward has remained in this comatose state since the operation and there is virtually no prospect for improvement. She is dependent on others for all activities of daily living and mobility.

The Ward remained a patient at Sibley from March 10, 1980 until March 23, 1983. On that date she was transferred to The Greenery in Brighton, Massachusetts, which is an intermediate care facility. She currently resides at the Greenery.

Plaintiff, Solomon Margolis, was appointed conservator for the Ward on June 23, 1980. Plaintiff filed a medical malpractice action against Sibley and others who were involved with the Ward's emergency room treatment and surgery. Sibley counter-claimed for doctor and medical service bills. On October 14, 1982, a jury returned a verdict for Plaintiff in the sum of $6 million; Sibley was granted judgment on its counterclaim. The parties agreed to compromise the verdict and judgment and settled the action in March 1983. The settlement terms were that the Ward would receive a total of $4.25 million from Sibley and staff, and that Sibley would forgive its bill for services rendered to the Ward, then in excess of $200,000 which amount included the counterclaim. Def.Ex. 10 & 11.

The settlement also provided that the Conservator would remove the Ward from Sibley to the Greenery. In September 1982, Sibley had filed a petition, which the Conservator opposed, in the Conservatorship Proceeding to compel transfer of the Ward from Sibley to a nursing home. Sibley's petition recited that continued hospitalization was medically unnecessary, based on the unanimous conclusions of Sibley's Utilization Review Committee [1] rendered in July 1980 and August 1982 and based on the written opinion of the Ward's attending physician, David Bachhuber, M.D.. Def.Ex. 7. After an evidentiary hearing, the Superior Court of the District of Columbia issued an order on September 27, 1982 directing the Conservator to file the necessary papers to secure medical evaluation of the Ward from suitable skilled care nursing homes. Def.Ex. 8. The Conservator did so but stated that pending the resolution of the medical malpractice verdict or other forms of payment requests, no sums were available to pay for such services. Def.Ex. 9. The day after the settlement petition was approved, the Ward was transferred to the Greenery.

Plaintiff's complaint seeks damages of $250,000 and continuing medical expenses. There is no specific breakdown of the charges. For the purpose of this summary judgment motion, the Court breaks the disputed amount into two catagories: 1) the

---

**1.** Sibley's Utilization Review Committee is an 18 member body of physician members of its medical staff. It is established under Social Security Act provision 42 U.S.C. § 1395x(k), and is charged with reviewing the duration of hospital stays and the medical necessity of hospital services, and to provide the most efficient use of available facilities and services.

balance of Sibley's unpaid charges covering the period August 1980 to March 1983;[2] and 2) unpaid medical bills, if any, and The Greenerys' charges from March 1983. Defendant denies liability for both categories and moves for summary judgment as a matter of law.

DISCUSSION

Fed.R.Civ.P. 56(c) allows a summary judgment motion to be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view all inferences to be drawn from underlying facts in the light most favorable to the party opposing the motion. *United States v. Diehold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1495 (D.C.Cir.1984). In deciding a motion for summary judgment, the Court looks beyond the pleadings and may take into consideration affidavits, depositions, including those taken in connection with a former action involving the same subject matter and the same parties, admissions, not limited to Rule 36 admissions, as well as oral testimony.

### 1. *Sibley's Expenses*

Defendant contends that it is not liable under its health insurance policy issued to Carol Lee Lally for any Sibley expenses. The Court agrees for the reasons discussed below and grants summary judgment to Defendant for any claims arising out of those expenses.

■ Defendant alleges that the Sibley expenses are excluded from the Policy's coverage because, among other reasons discussed below, they were not necessary for medical care of illness or medical treatment. Defendant alleges that the Policy section entitled General Exclusions, which states in pertinent part:

This Policy does not cover—

—Anything not ordered by a doctor or not necessary for medical care of illness; check-up examinations and tests not necessary to medical treatment. Def.Ex. 26 at 9.

requires the exclusion of any charges which may have accrued during the Ward's stay at Sibley between August 1980 and March 23, 1983.

The record provides ample support for Defendant's claim that after July 1980, the Ward did not require the extensive attention or treatment available in an acute care hospital such as Sibley. There is no question that the Ward required care after July 1980, and will continue to do so, but that care could have been provided by an intermediate care facility.

David Bachhuber, M.D., the Ward's attending physician from approximately March 25, 1980, until her departure from Sibley on March 23, 1983, testified on September 16, 1982 in the Conservatorship Proceeding, that the Ward's condition was stable and that her treatment at Sibley consisted of "routine care as far as being turned, tube fed, the catheter is emptied periodically. She is bathed, given an enema periodically." Def.Ex. 7 at 19. He testified that the Ward had suffered urinary tract infections for which she was seen by a specialist. Dr. Bachhuber was of the opinion that the Ward did not require the attention of an acute care hospital; that, in fact, she "could be taken care of at home with the appropriate instructions to the family. In lieu of that, she could be taken care of at a qualified nursing home." Def.Ex. 7 at 22. It was the opinion of Dr. Bachhuber that the Ward could have received adequate care at an institution other than an acute care hospital beginning approximately September 1980. *Id.* at 18. Moreover, in July 1980, Sibley's Utilization Review Committee came to the unanimous conclusion that the Ward no longer required acute hospital care. Instead, she could be well taken care of in a skilled

---

**2.** In April 1981, Defendant Prudential Insurance Company made its own determination that the Ward's hospitalization after July 31, 1980 was medically unnecessary. In accordance with that determination, Prudential paid a total of $51,428.22 on Sibley's charges to July 31, 1980.

nursing care facility. Def.Ex. 7 at 11. Doctors James Montgomery and Arthur Kaufman, witnesses for Prudential, shared in the opinion that the Ward's stay at Sibley after July 1980 was unnecessary. Def.Ex. 24 at 14; Def.Ex. 22.

Despite the fact that the Ward did not require the extensive care provided by an acute care hospital such as Sibley after July 1980, the Court cannot take the additional step of assuming that other medical care and treatments given at Sibley, distinct from the normal acute care given, were not "medically necessary." However, there is no need to separate out the charges for those treatments from the overall Sibley charges as the Court finds that all Sibley charges are excluded from the policy's coverage as they were not "incurred" by the Ward.

■ The health insurance policy (the "Policy") in question only provides coverage for charges "incurred" by the insured. Defendant argues that the settlement of the medical malpractice suit under which Sibley forgave the unpaid charges for services rendered the Ward, eliminated the Ward's obligation to pay Sibley and so eliminated defendant's liability for the coverage of those expenses. Plaintiff, on the other hand, characterizes the "forgiveness" of such charges as a set-off against the verdict obtained by the Ward in the malpractice action against Sibley.

Health insurance is an undertaking to indemnify another for losses caused by illness. *Anderson v. Group Hospitalization, Inc.,* 203 A.2d 421, 423 (D.C.App. 1964). In *Anderson,* the insured had multiple coverage; one contract provided medical services and the other covered hospital expenses. The latter insurer paid the insured's expenses related to his surgery and the insured sued the former insurer for duplicative benefits. The District of Columbia Court of Appeals denied liability and held that once the second insurer had paid the expenses the insured suffered no compensable losses. The court stated: "If no loss has been sustained by [the insured],

then there is no basis for indemnity." *Id.* at 424.

By entering a voluntary settlement agreement, the parties set aside the verdict and counterclaim amount and compromised on a new dollar amount. This agreement, which included Sibley's forgiveness of its charges, was independent of the original verdict. The forgiveness of the charges may not be characterized as a set-off against the verdict because that verdict was no longer in force. Once Sibley forgave its unpaid charges against the Ward, the Ward no longer had an obligation to pay for medical and other services Sibley had rendered to her. Therefore, the Ward did not sustain medical expense losses for which Defendant had a duty to indemnify her.

The Policy only provides coverage for charges "incurred" by the insured. In *United States v. Metropolitan Life Insurance,* 683 F.2d 1250 (9th Cir.1982), the Ninth Circuit held that the Government could not demand repayment from an insurance company where the insured had received treatment without cost from a Veterans Administration facility. The health insurance policy in that case provided for repayment for expenses actually incurred. The Court held that since the treatments were without cost, the insured patients did not incur expenses. Therefore, the insurers did not have an obligation to reimburse the service provider. *See also United States v. St. Paul Mercury Indemnity Co.,* 238 F.2d 594 (8th Cir. 1956) (court denied repayment to the Government where medical services were provided by the Veterans Administration without cost as the insured did not "actually incur" any expenses).

Where there is no obligation to pay for a thing provided, there is no "expense incurred." *See St. Paul Mercury, supra* at 598. Unlike the above cases, the Ward was initially charged for the medical services provided. However, by virtue of the settlement agreement, the Ward was relieved of any duty to pay those charges and did not

"incur" expenses as required by the Policy as a condition for payment of benefits.[3]

▉ Plaintiff asserts that the collateral source rule precludes Defendant from relying on the settlement arrangements made between Sibley and the Ward. The collateral source rule allows an injured party to recover in full from a wrongdoer regardless of anything he may receive from a collateral unconnected source. *Hudson v. Lazarus*, 217 F.2d 344, 347 (D.C.Cir.1954). The Court find the collateral source rule to be inapplicable in this situation as it was the "wrongdoer" itself that waived the charges. Sibley could not have relied on any monies received by the Ward from insurance to offset its own liability in the malpractice action. However, an insurance company has no obligation to cover medical charges which the medical provider itself has waived. Defendant shall be granted summary judgment as a matter of law for all claims arising out of Sibley's unpaid, forgiven charges to the Ward.

### 2. *Any Unpaid Medical Bills and The Greenery's Expenses*

Defendant argues that Plaintiff's failure to submit "proofs of loss" in a timely fashion precludes Plaintiff's action for recovery of benefits for expenses incurred in connection with any unpaid medical bills and The Greenery's charges. The Proofs of Loss section of the Insurance Policy states:

> Written proof of loss must be furnished to Prudential at its office within ninety days after the termination of the period for which Prudential is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later

than one year from the time proof is otherwise required.

Def.Ex. 26 at 14. The Policy also contains a Notice of Claim provision which requires the insured to give notice of a claim within sixty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Def. Ex. 26 at 13.

Defendant agrees that plaintiff submitted the appropriate "notice of claim" of the Ward's illness but argues that plaintiff has not submitted the "proofs of loss" for medical bills and for The Greenery's charges within the respective 90 day proof-of-loss periods.[4] Plaintiff alleges in his complaint that he has submitted all proofs of loss requested by defendant and argues that because the Ward is continuing to receive treatment at The Greenery for the same condition for which notice of claim was submitted, Plaintiff is still within time to submit The Greenery's bills, even if he has not already done so, because the Ward's condition is not yet "terminated." Plaintiff's demand for judgment of $250,000 in his complaint does not specify which bills this payment is supposed to cover.

Clearly plaintiff is not able to wait until the Ward's illness is terminated to submit additional bills. The Policy terms dictate that proofs of loss be submitted within 90 days after the termination of the period for which Prudential is liable. With regard to The Greenery's charges, Prudential's alleged liability is limited to the first sixty days of confinement at that facility. Therefore, the ninety day proof of loss period must begin running after that sixty day liability period. However, the Court is unable to grant defendant summary judgment at this time as to liability for any unpaid medical bills or for The Greenerys' expenses because there may be a material issue of fact as to whether plaintiff has

---

3. The record indicates that the contigent fee paid to litigation counsel in the malpractice action was based in part on the charges forgiven by Sibley. Def.Ex. 13. However, that separate fee arrangement has no bearing on whether those expenses were incurred by the Ward for which she had a legal obligation to pay.

4. The Policy terms limit benefits for eligible convalescent nursing home charges to a maximum of 50% for applicable hospital semi-private room rate for a maximum of 60 days. Def.Ex. 26 at 6.

submitted proofs of loss in the appropriate time, or within a reasonable time if it was not reasonably possible to give proof within the appropriate time. (As the Policy is still in force, it appears that any appropriately submitted proofs of loss for continuing medical expenses of the Ward will be covered by the Policy, subject to the Policy's conditions and limitations.) There may also be a material issue of fact in dispute as to whether Plaintiff failed to permit Defendant to examine the Ward as required under the Policy. Def. Ex. 26 at 14., and if so, whether such consent was needed. A hearing is required to determine whether there exist material issues of fact concerning these matters.

An appropriate Order accompanies this Memorandum.

### ORDER

It is by the Court this 20th day of December, 1985,

ORDERED, that Defendant's Motion for Summary Judgment for all claims arising out of Sibley's unpaid, forgiven charges to the Ward is GRANTED; and it is

FURTHER ORDERED, that parties to this action shall appear for a hearing on the issues of whether Plaintiff submitted Proofs of Loss in a timely fashion and whether Plaintiff failed to give the necessary consent for Defendant to examine the Ward. Said hearing shall be held on the 16th day of January, 1986, at 10:00 a.m., in Courtroom No. 8 of the United States Courthouse.