327 So.2d 671 (1976)
Earl E. REEVES
v.
GULF STATES UTILITIES CO. et al.
No. 10210.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
Rehearing Denied March 1, 1976.
Writs Refused April 13, 1976.
*673 Dennis R. Whalen, Baton Rouge, for appellant.
Frank W. Middleton, Jr., Baton Rouge, for Gulf States Utilities Co.
Charles E. Pilcher, Baton Rouge, for City of Baton Rouge.
Before LANDRY, COVINGTON and BARNETTE, JJ.
LANDRY, Judge.
This matter is before us on remand from the Supreme Court with instructions to assess quantum due plaintiff, Earl E. Reeves (Appellant), for personal injuries and related expenses and loss of income incurred in an accident in which a vehicle belonging to defendant, Gulf States Utilities Co., and driven by Gulf State's employee, Robert J. Tassin, struck a motorcycle on which Appellant was riding in the scope and during the course of his employment as a motorcycle patrolman by the City of Baton Rouge (City). Defendants concede liability. Appellant complains of the inadequacy of the jury award of $27,500.00, claiming error by the trial court in refusing to instruct the jury as to the collateral source rule which Appellant invoked below. Finding error on the part of the trial court, as urged by Appellant, we remanded this matter to the lower court for retrial of the issue of damages only. Reeves v. Gulf States Utilities Co., La.App., 312 So.2d 118, March 10, 1975. The Supreme Court granted writs and agreed that the trial court erred in refusing the requested instruction. However, the Supreme Court finding the record complete as to the facts, concluded this court should decide the issue of quantum as a matter of judicial expediency and economy, and remanded this cause to this court. Reeves v. Gulf States Utilities Co., La.App., 312 So.2d 118 (1975).
Appellant was injured December 15, 1972, at which time Appellant was 28 years of age. From the scene of the accident, Appellant was taken to the hospital where he was seen by Dr. Roy Regan, Surgeon, who diagnosed Appellant's injuries as severe bruises and contusions to the left shoulder, left side of the face and left side of the head. An obvious loss of hearing in Appellant's left ear prompted Dr. Regan to call Dr. Relvert J. Coe, Otolaryngologist (ear, nose and throat specialist), in consultation. Dr. Regan suspected brain concussion because of plaintiff's vomiting. However, Dr. Regan discharged Appellant from the hospital on December 17, 1972, and Appellant has not been rehospitalized since. On March 12, 1973, Dr. Regan released Appellant to resume work subject to the limitation that Appellant not drive a motor vehicle of any sort. This restriction was due to Appellant's continued dizziness and loss of balance resulting from permanent injury sustained to Appellant's left ear as a result of the accident. Dr. Regan stated the opinion that Appellant should be permanently barred from operating a motor vehicle because of Appellant's propensity to dizziness and loss of balance.
Dr. Relvert J. Coe, Otolaryngologist, first saw Appellant on December 17, 1972. He found Appellant suffering from dizziness and loss of hearing. He diagnosed Appellant's condition as presumable fracture *674 of the temporal skull bone in the area of the middle ear space labyrinth. On December 21, 1972, Dr. Coe saw Appellant in the doctor's office. Examination disclosed normal hearing in Appellant's right ear, but a 50% loss of hearing in Appellant's left ear. On June 3, 1973, Dr. Coe found Appellant's condition unchanged. In Dr. Coe's opinion, Appellant has sustained damage to the balance system and a 50% loss of both volume and sound discrimination in the left ear. He explained that Appellant has lost 50% of ability to determine the source or direction from which sound originates, and an equal percentage of ability to hear sounds. This condition will make it difficult for Appellant to hear in a noisy environment. Dr. Coe stated a hearing said might restore some of Appellant's volume loss, but would not improve ability to determine the direction from which sound emanates. Testifying at the trial in June, 1974, Dr. Coe expressed some surprise that Appellant's loss of balance had not corrected itself within six months to a year of the accident. He felt, however, that this condition would ultimately disappear completely. Dr. Coe was of the view that Appellant's driving ability was somewhat impaired due to the injuries, but nevertheless felt Appellant should not be barred from operating a motor vehicle.
On March 25, 1974, Appellant was seen by Dr. Frank S. Norman, Otolaryngologist, who found Appellant suffering from numbness and loss of sensation on the left side of the face, dizziness, loss of hearing in the left ear and tinnitus (ringing in the ears). Dr. Norman found normal hearing in Appellant's right ear, but noted a 65% loss of hearing in Appellant's left ear. His examination revealed nerve damage in Appellant's left ear which adversely affected Appellant's balance. Dr. Norman believed the hearing loss may not be permanent and may improve with time. In his opinion, Appellant's dizziness will eventually disappear. He felt that while the tinnitus will probably improve, it will never completely disappear. He felt that the loss of hearing will inconvenience Appellant in that it reduces Appellant's ability to determine the source of sound, and also limits capacity to understand what Appellant hears. He explained that Appellant will tend to miss words in conversation, especially the beginnings and endings of words originating from the left.
From the time of Appellant's injury, until he resumed work, Appellant was paid an aggregate of $2,545.98 by the City, itemized as follows: Workmen's Compensation $597.80; medical expense $635.58; and 86 days sick leave in the sum of $1,312.60. At trial judgment was rendered in favor of plaintiff-appellant for the sum of $27,500.00 without itemization by the jury. Judgment was also rendered below in favor of the City, as intervenor, against Appellant in the sum of $2,545.98, and ordered said amount paid the City by preference out of the amount for which defendants were cast.
At the trial, Appellant called Dr. Arlo Chavers, Medical Examiner, City Police Department, who was not previously aware Appellant had been recalled to duty as a foot patrolman following the accident. Dr. Chavers noted that in the light of Appellant's injury, a reevaluation of Appellant's status was in order. As medical examiner, he was of the positive opinion Appellant could no longer be employed in a position involving the carrying of a weapon. He stated that he would absolutely recommend Appellant's transfer to an administrative position and, alternatively, Appellant's disability retirement in the event Appellant could not be so accommodated. He explained that, as a patrolman, Appellant's loss of hearing would endanger Appellant's safety as well as the welfare of co-workers who depend upon a fellow officer to operate at 100% efficiency at all times. Dr. Chavers acknowledged that it is customary for the City to "take care" of officers injured in the line of duty by placing them in administrative positions for the remainder *675 of their police careers. He stated he personally knew of instances in which this had been done.
When injured, Appellant received total pay of $885.00 per month composed of $700.00 paid by the City, $150.00 in supplemental pay from the State of Louisiana, and $35.00 hazardous duty pay because of Appellant's employment as a motorcycle patrolman. At the time of trial in June, 1974, Appellant was being paid his base City pay of $700.00, and State supplement of $150.00 per month, for duty as a foot patrolman. Since resuming work, appellant has not received the $35.00 per month hazardous duty wages paid a motorcycle patrolman.
Appellant testified he has completely recovered from the bruises and contusions. He is still bothered by the tinnitus once or twice a month, the episodes lasting from one hour to a day. He experiences constant numbness on the left side of his face, the sensation being similar to that resulting from a local anesthetic administered by a dentist. His gums and teeth are unduly sensitive. Appellant acknowledged making the same pay as before the accident except for the $35.00 monthly hazardous duty pay. He admitted he is still doing some extra duty work for private employers, but not as much as before his injury. He also stated he has passed the examination for sergeant, and is presently thirteenth on this promotional list. He concedes there are numerous administrative positions to which he could be assigned in the police department, and which would permit opportunity of advancement to the rank of sergeant.
In addition to the $885.00 monthly wages earned by Appellant prior to the accident, Appellant performed after duty work for private employers such as providing police protection in stores and similar establishments. For the two years prior to his injury, Appellant earned an average of $2,066.00 annually from this outside source. It is conceded that if Appellant were forced to retire for physical disability, he would be entitled to a pension of at least $440.00 per month. There is no proof in the record that either plaintiff Reeves or defendants made any contribution to the pension fund.
Appellant argues that the trial court's failure to give the jury the requested collateral source rule instruction resulted in an inadequate award for loss of future earnings. It is contended that had the jury been instructed as requested, a much larger award for loss of earnings would have resulted because the jury would have been compelled to disregard, in determining lost earnings, the fact that Appellant is entitled to a pension of over $400.00 monthly if he were forced to take a disability retirement.
The collateral source rule is well entrenched in our jurisprudence. It holds that a tort-feasor is not entitled to credit for benefits paid an injured plaintiff from a source to which the tort-feasor makes no contribution. Vogt v. Hotard, La.App., 114 So.2d 714; Doerle v. State, La.App., 147 So.2d 776.
Although we find the collateral rule inapplicable herein because, as hereinafter shown, Appellant has failed to establish a loss of future earnings because of the probability of compulsory disability retirement, nevertheless, the requested instruction should have been given.
In a jury trial, the jury is the sole judge of the law and facts notwithstanding it must accept the law as given it by the court. In this instance, the collateral source rule would have become relevant had the jury found Appellant entitled to damages for loss of future earnings, and also found Appellant entitled to pension benefits from the City. Had the jury so found, either rightfully or wrongfully, its decisions in these regards would then have been the subject of appellate review. Since damages were not itemized by the jury in this instance, it is impossible to determine on appeal *676 what portion of the award below, if any, was for loss of future earnings. Conceivably the jury award could have been entirely for pain and suffering. Equally tenable, the jury may have concluded Appellant was entitled to the entire award for loss of future earnings predicated upon the hereinafter mentioned economic analysis of Dr. John W. Chisholm, Economist. In this latter event, or the event any portion of the jury award was for loss of future wages, the jury should have been aware that defendants were not entitled to diminution of such award because of pension benefits to be received by Appellant from a source to which defendants did not contribute. Thomas v. Paper Haulers, Inc., La.App., 165 So.2d 61.
Defendants concede liability for the workmen's compensation benefits and sick leave payments made by the City to Appellant for time lost following the accident. Appellant has received full wages from these sources from the time of the accident until Appellant's resumption of employment. The City has obtained reimbursement of said amounts by virtue of its judgment in intervention. Under the circumstances, it would appear that Appellant may either demand the sick leave pay from the City, and thus utilize the amount of sick leave involved, or permit the City to retain said amount and restore the 86 days of sick leave charged to Appellant. We deem it inequitable to require the tort-feasor to make restitution to the injured party, and also to the person paying benefits from a fund to which the tort-feasor does not contribute.
We find no merit in defendants' contention that Appellant, as the injured party, may not invoke the collateral source rule unless Appellant shows his own contribution to the fund from which benefits are received. So far as we are aware, our jurisprudence makes no such requirement. Besides the hereinabove cited authorities, we have also considered Hudgens v. Mayeaux, La.App., 143 So.2d 606; Mathews v. F. Miller & Sons, Inc., La.App., 146 So.2d 522; Sebren v. Millers Mutual Fire Insurance Co. of Texas, La.App., 182 So.2d 99, and Taft v. Gist, La.App., 293 So.2d 641. In every instance, we find the principle employed to be that where the injured party receives payment from a source involving the loss of a benefit due him, such as the use of sick or annual leave, or where payment is made from a pension fund to which the tort-feasor does not contribute, the tort-feasor is not entitled to diminution of damages for lost earnings on account of such payments. We are unaware of any instance in which it has been held that the injured party must contribute to a pension fund to invoke the collateral source rule. We hold, therefore, that if Appellant is entitled to loss of future earnings because of enforced retirement, the collateral source rule is applicable herein.
To establish his claim for alleged lost earnings, Appellant offered the testimony of Dr. John W. Chisholm, Economist, who has also served as a City volunteer police officer for several years. Dr. Chisholm is thoroughly familiar, by virtue of his voluntary police work, with all facets of operation of the Baton Rouge Police Department. He calculated Appellant's potential loss of earnings predicated upon Appellant's attaining the rank of police sergeant within two years (after ten years service), and, alternatively, on the assumption Appellant would not be promoted. In each instance, Dr. Chisholm also assumed Appellant would continue to earn the same amount in extra duty work for private employers, and that Appellant would also receive hazardous duty pay in the amount of $35.00 monthly. Employing these factors, Dr. Chisholm calculated Appellant's loss of future earnings based on Appellant's supposed retirement after 20 and 30 year periods of service. Chisholm added to these computations his estimate of Appellant's earnings after retirement to age 71, Appellant's life expectancy. Assuming Appellant's attaining Sergeant and retiring after 20 years service, Chisholm found Appellant would earn *677 a gross of $338,126.34 to age 71. Discounted at 5%, he reached a present value of said sum in the amount of $173,690.39, and discounted at 7%, he computed the present value to be $143,609.33. Supposing Appellant's making Sergeant and retiring after 30 years service, Appellant's total earnings would be $472,786.34 with hazardous duty pay and $426,990.00 without such pay. Discounting the latter figure at 5% would entitle Appellant to $215,591.81, and at 7%, $171,718.02 for lost earnings. On the premise that Appellant did not attain rank of Sergeant and retired after 20 years service, and without considering any extra duty pay, Dr. Chisholm found that Appellant's income to age 71 would have a present value of $141,808.07 if discounted at 5% and $118,327.20 if discounted at 7%.
Dr. Chisholm conceded that if Appellant were forced to retire, Appellant was capable of earning at least minimum wages in other lines of employment. Assuming Appellant retired after having attained the rank of Sergeant and having served twenty years, and also assuming Appellant earned minimum wages at other lines of employment to age 71, Appellant's earnings, after retirement, would produce a present net worth of $95,435.63 if discounted at 5%. Subtracting this sum from Appellant's earnings as Sergeant during this same period, Dr. Chisholm found Appellant would suffer a net loss of $78,254.76 in earnings. Discounting Appellant's minimum wage schedule earnings at 7% for this same period, Dr. Chisholm determined Appellant's net loss would be $114,529.88.
It is basic law that an injured plaintiff must establish claimed damages or losses with legal certainty and by a reasonable preponderance of evidence, and that evidence which establishes only speculative, conjectural, mere possibility or even unsupported probability of damages does not suffice. Dowden v. State, La.App., 81 So.2d 48; Pierrotti v. St. Paul Fire & Marine Insurance Co., La.App., 273 So.2d 363.
We find Appellant has failed to establish with legal certainty alleged loss of future earnings by virtue of enforced retirement and acceptance of a pension in lieu of wages as a police officer. We think the testimony of Appellant and Dr. Chavers clearly establishes a City policy of continuing police officers injured in line of duty as administrative officers in the police department. Significantly, Appellant has not cited one instance in which an officer injured in line of duty was compelled to accept disability retirement because he could not be accommodated in an administrative position in which he could function. We find the evidence preponderates in favor of the conclusion that it is far more probable than not that Appellant will be continued by the City in an administrative police position with no reduction in wages, save for hazardous duty pay as a motorcycle patrolman, rather than compel Appellant's involuntary retirement for disability incurred in line of duty.
Appellant has, however, established a loss of $35.00 per month as hazardous duty pay, and has also shown some slight loss in extra duty wages received from private employment. Since the accident, Appellant has continued outside work but on a reduced scale, partly because one such employer discontinued Appellant's service, and partly because Appellant found one such employment (warehouse duty) too dangerous in view of Appellant's handicap. We find an award of $10,000.00 will adequately compensate Appellant for such earning losses, and the additional sum of $25,000.00 will fully recompense Appellant for past, present and future pain, suffering, inconvenience, disability and limitations resulting from the injuries noted.
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff-appellant, Earl E. Reeves, against defendants, Gulf States Utilities Co. and Robert J. Tassin, in solido, in the sum of Thirty-seven Thousand Five Hundred Forty-five and 98/100 ($37,545.98) Dollars, *678 with legal interest thereon from date of judicial demand, until paid.
It is further ordered, adjudged and decreed that there be judgment herein recognizing the intervention of the City of Baton Rouge, and that out of the aforesaid award to plaintiff, Earl E. Reeves, the sum of Two Thousand Five Hundred Forty-five and 98/100 ($2,545.98) Dollars be paid said Intervenor by preference and priority, together with legal interest thereon from date of judicial demand, until paid.
It is further ordered, adjudged and decreed that all costs of these proceedings, including the cost of expert witness fees fixed by the trial court, be paid by defendants Gulf States Utilities Co. and Robert J. Tassin.
Amended and rendered.