**Leon B. REID et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 11770.**

District of Columbia Court of Appeals.

Argued March 7, 1978.

Decided Aug. 30, 1978.

Robert E. Miller, Washington, D. C., for appellants.

Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the case was briefed and argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and FERREN, Associate Judges, and MOULTRIE, Chief Judge, Superior Court of the District of Columbia.*

MOULTRIE, Chief Judge:

Leon B. Reid, while a student in the fifth grade, was injured in a District of Columbia public school when a bathroom partition fell on his foot and broke it in two places. Reid, a minor, sued the District of Columbia through his mother and next friend, Ms. Twitty, claiming negligence on its part in maintaining the partition. A jury found for the defendant District of Columbia.

At trial, in the presence of the jury, and over the objections of counsel for the plaintiffs, testimony was repeatedly elicited from Ms. Twitty, both by defense counsel and by the judge, concerning Ms. Twitty's eligibility for Medicaid and her failure to submit the medical bills in question to Medicaid for payment. Plaintiff-appellants claim that admission of such evidence was reversible error. We agree.

A cardinal principle of law is that, in the absence of punitive damages, a plaintiff can recover no more than the actual loss suffered. "[W]hen the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages." *Lovejoy v. Murray*, 70 U.S. (3 Wall.) 129, 134, 18 L.Ed. 129 (1866). An injured person may not have more than full satisfaction. He or she has no right to make a profit from the injury. Therefore, evidence is admissible to show that the plaintiff has already been reimbursed, in whole or in part, for the injury. The purpose of the rule is to prevent unjust enrichment. *Snowden v. D. C. Transit System, Inc.*, 147 U.S.App.D.C. 204, 454 F.2d 1047 (1971).

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a). Designated as Chief Judge of the Superior Court of the District of Columbia effective June 22, 1978.

■ However, the jury should not be informed of the fact or amount of any payments; such information only tends to mislead them in their deliberations concerning a just, compensatory verdict. *Martello v. Hawley,* 112 U.S.App.D.C. 129, 300 F.2d 721 (1962). Whether a setoff is proper to prevent unjust enrichment is a matter of law for the court's determination and not a question for the jury. *See Russo v. Matson Navigation Company,* 486 F.2d 1018, 1019 (9th Cir. 1973). The jury should be asked to find the amount of full, just compensation, and the court should thereafter adjust the verdict by the amount of any applicable setoff. *See Snowden v. D. C. Transit System, Inc., supra,* 147 U.S.App.D.C. at 205 n. 3, 454 F.2d at 1048 n. 3.

■ In the instant case, evidence of Ms. Twitty's eligibility for payments from Medicaid was repeatedly brought before the jury in violation of the rule of *Martello.* In *Martello,* the court held that if evidence of payments should inadvertently come before the jury, an instruction should be given to disregard it. Here, the evidence was not brought out inadvertently but in part by the judge, and no instruction to disregard the evidence was given. The case should be remanded for a new trial on this ground alone.

In their brief, appellants claim that under the collateral source rule, it was error to admit evidence of Ms. Twitty's eligibility for Medicaid under *any* circumstances, either to the jury or to the judge. Both appellants and appellee agree that evidence of compensation from a collateral source is not admissible to mitigate damages. Appellee cites the general rule that ". . . the receipt of payment from a collateral source may not be injected into a trial to mitigate damages. . . ." Appellee's brief, page 6, quoting from *Jacobs v. H. L. Rust Company,* D.C.App., 353 A.2d 6 (1976).

■ This well-developed exception to the general law is called the collateral source rule and has been adopted in this jurisdiction in *Hudson v. Lazarus,* 95 U.S.App.D.C. 16, 217 F.2d 344 (1954). There the United States Court of Appeals for the District of Columbia Circuit stated:

In general the law seeks to award compensation, and no more, for personal injuries negligently inflicted. Yet an injured person may usually recover in full from a wrongdoer regardless of anything he may get from a "collateral source" unconnected with the wrongdoer. Usually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted. [*Id.* at 18–19, 217 F.2d at 346.]

This is not to say that the defendant should pay more than full compensation. But payments should not be reduced by the injured person's obtaining money or care from a collateral source. It is better that the injured party receive a double recovery than for the wrongdoer to be relieved of its liability for damages. One of the purposes of negligence damages is to deter negligence and encourage due care. *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525 (9th Cir. 1962).

To decide whether evidence of eligibility for Medicaid is admissible to mitigate damages, we must first ask the question: is Medicaid a collateral source? Medicaid is paid for in part by the defendant District of Columbia and in part by the federal government. In *Jacobs, supra,* the court held that reimbursement from a third party who is independent of the wrongdoer is from a collateral source. But, this leaves open the question of whether a source only partially independent of the wrongdoer is also a collateral source.

When the compensation comes from someone other than the defendant, the situation is clear and courts generally deem such compensation to be collateral. The fact that it comes in part from the defendant tortfeasor does not itself preclude the possibility that it is from a collateral source. Because of the nature of the source, the

defendant may not be paying twice for the same injury. However, when compensation does come in part from the defendant, it is a close question as to whether the source is collateral.

In the case of *United States v. Price,* 288 F.2d 448 (4th Cir. 1961), a civil employee of a Naval shipyard was injured through the negligence of the defendant, the United States. Defendant sought to have plaintiff's receipt of benefits under the Civil Service Retirement Act mitigate damages. The court in *Price* held that the Civil Service Retirement Act was a collateral source and not admissible to mitigate damages because (1) the CSRA is funded in large part by contributions of employees such as the plaintiff, (2) the benefits are payable because of disability and not for tort liability, and (3) the benefits come from a separate fund created for the benefit of the employees and not from the general revenues as do tort damages.

In the instant case, Medicaid is funded in very small part by the class of eligible people (which may be analogized to the class of employees in *Price*). But like the situation in *Price,* the benefits from Medicaid are not paid in anticipation of tort liability but only on account of medical injuries and financial need. Also, Medicaid does not come from the general revenues of the District of Columbia but from a special fund created for the recipient class of Medicaid eligible people. (*See, e. g.,* Pub.L.No. 94–333, 90 Stat. 785.)

In *Russo, supra,* plaintiff brought suit under the Jones Act for negligence on the part of his employer, Matson Navigation. Plaintiff was receiving $300 per month as a disability retirement pension pursuant to an agreement between the Pacific Maritime Association, to which defendant belonged, and plaintiff's union, the Seafarer's International Union of North America. Defendant wished to have its liability setoff by the present value of the pension. The court held that the pension was from a collateral source because (1) the pension although paid for by the defendant, was not received on account of the injury but rather as a

fringe benefit of employment or a type of deferred compensation for services rendered, and (2) benefits under the pension plan may be claimed as a matter of right without regard to the liability of the employer.

Medicaid is not a type of compensation for services rendered, although it may be viewed as a fringe benefit of citizenship, and it may be claimed as a matter of right without regard to liability on the part of the District of Columbia.

In *Bradshaw v. United States,* 143 U.S. App.D.C. 344, 443 F.2d 759 (1971), a Metropolitan Police Department officer was hit by a vehicle belonging to the defendant, the United States. Hospitalization and disability retirement pay were received by the plaintiff from his employer, the District of Columbia. Defendant claimed that these payments were not from a collateral source since the United States paid substantial sums into the fund from which the payments were made. The appeals court found that the source was collateral because most of the money in the fund came from the District of Columbia revenues and employee contributions.

Medicaid is paid for mostly by the federal government; the defendant District of Columbia pays between seventeen and fifty percent of the cost of Medicaid, depending on the per capita income of the District relative to the nation as a whole. (*See* Pub.L.No.90–227, 1967 U.S.Code Cong. & Admin.News, p. 829, 81 Stat. 744 and 42 U.S.C. 1396d). However, as noted above, the contributions of the recipient class are very small.

Because Medicaid was established to provide health services for the indigent and not to compensate for tort liability, because Medicaid payments may be claimed by plaintiff as a matter of right and independent of any liability on the part of the defendant, and because most of the funding for Medicaid comes from a third party, we hold that Medicaid payments come from a collateral source and are not admissible to mitigate damages.

Although the collateral source rule is almost universally accepted, there have been attempts to have evidence of a collateral source admitted as probative of other issues.

In *Eichel v. New York Central Railroad Company,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), an employee of the Railroad was injured by the negligence of the defendant Railroad. The Railroad offered evidence of a disability pension which plaintiff was receiving, for the purpose of impeaching the testimony of the plaintiff as to his motive for not returning to work and as to the permanency of his injuries. The Supreme Court ruled that the likelihood of misuse by the jury clearly outweighed the value of the evidence.

In *Tipton v. Socony Mobil Oil Company,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963), plaintiff was injured by the defendant employer. Plaintiff sued under the Jones Act, which applies only to seamen. Defendant sought to admit evidence that plaintiff had accepted benefits through the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* Since compensation under this Act specifically excludes a member of a crew of any vessel, defendant introduced this evidence to show what plaintiff thought to be his legal status. The Supreme Court, in ruling that admission of such evidence was reversible error, quotes a note sent to the trial court by the jury during its deliberations: "If we find Mr. Tipton is not a seaman or a member of the crew of drilling barge No. 1, does he have recourse for compensation under the Outer Continental Shelf or any other act?" The trial judge said in answer: "This is not a matter for the jury's consideration." This exchange illustrates the prejudicial effect of evidence of a collateral source and its tendency to be misused by the jury in the determination of liability.

■ Here, appellee would have evidence of plaintiff's eligibility for Medicaid admitted to show plaintiff's failure to limit damages. Appellee cites *Parking Management, Inc. v. Jacobson,* D.C.App., 257 A.2d 479 (1969), wherein plaintiff's automobile was damaged in defendant's garage; but on driving away, plaintiff did not stop the automobile when the oil warning light came on. The court there ruled that the parking garage was liable only for the damage caused by collision in its garage and not for the much more substantial damage caused by running the engine without oil after the warning light came on. This was done to limit defendant's liability to damages proximately caused by defendant's negligence. Appellee argues that since plaintiff had the right to have his medical expenses paid by Medicaid, but failed to exercise that right, plaintiff failed to limit his damages, and evidence of the collateral source should be admissible to show such failure. But, the *Parking Management* case is not analogous to the instant case. Here the plaintiff has limited his damages to those proximately caused by the falling partition. Appellee confuses the extent of the injury to the plaintiff with the amount of plaintiff's expenses attributable to the injury. If plaintiff did not go to a doctor after the partition fell on his foot and more severe complications developed, the situation would then be analogous to the *Parking Management* case, and defendant would not be liable for the complications caused by plaintiff's failure to see a doctor.

■ The argument against allowing the collateral source exception, as explained above, is the prevention of unjust enrichment by plaintiff's double recovery for a single injury. But under appellee's argument, evidence of the collateral source should be admissible to show that there was *not* a double recovery, *i. e.,* plaintiff had a collateral source but chose not to use it, thereby implying that the collateral source of funds might still be available. Although evidence of failure to take advantage of Medicaid might be relevant to such an issue, that issue was inapposite to a determination of defendant's liability. In other words, we find that the evidence in question is not probative of any material issue in this case. Its only effect is to confuse and distract the jury from its task of deciding liability and, if appropriate, the amount of compensation.

Appellee makes the final argument that the Medicaid testimony was only relevant to the issue of damages; that since the jury found no liability, it never reached the issue of damages. Therefore, even though it was error to admit such testimony, it was harmless error. This exact argument was rejected in *Caughman v. Washington Terminal Company,* 120 U.S.App.D.C. 217, 345 F.2d 434 (1965), quoting *Tipton, supra:*

> "We disagree with the suggestion of the Court of Appeals that the prejudicial effect of the evidence of other compensation would be restricted to the issue of damages and would not affect the determination of liability. That suggestion ignores that the evidence was presumably considered without qualification as bearing on a basic fact essential to liability. * * * " [*Id.* at 218, 345 F.2d at 435.]

Although no limiting instruction was given in the instant case, the court in *Caughman,* following *Eichel, supra,* went on to hold that an instruction to limit consideration of the evidence of a collateral source to the issue of damages is insufficient to avoid misuse by the jury.

The admission of the Medicaid testimony was especially improper in this case. Even if plaintiff's medical bills were fully paid by Medicaid, or should plaintiff have these bills paid by Medicaid before the new trial, such fact could not be used to mitigate damages. Even if we were to find that Medicaid is not a collateral source, and plaintiff's bills were fully paid by Medicaid, this fact still could not be brought before the jury. Furthermore, in the instant case, appellee would have evidence brought before the jury that plaintiff was *not* reimbursed by a collateral source. Such evidence is not probative of defendant's liability or the extent of plaintiff's damages. Instead, it is an invitation for the jury to speculate that if they find no liability, plaintiff will still be reimbursed for his losses through Medicaid. There was no evidence that Medicaid would actually pay the bills; there was shown only the possibility that it would pay the bills.

Appellants also claim as error the trial court's failure to give instruction No. 144, "Invitee—Definition of and Duty Toward," the repetitive nature of the court's instructions not objected to at the time of trial, and the court's alleged gestures in the presence of the jury. Although we would find no error on these grounds, it is unnecessary to reach these issues as our finding on the admission of the Medicaid testimony is dispositive of the case.

*Reversed and remanded for a new trial.*