**DISTRICT OF COLUMBIA, Appellant,**

v.

**Doris L. Rawlings JACKSON, et al., Appellees.**

**No. 80–996.**

District of Columbia Court of Appeals.

Argued Feb. 2, 1982.

Decided Oct. 6, 1982.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Samuel M. Shapiro, Washington, D.C., with whom Irwin G. Meiselman, Rockville, Md., was on the brief, for appellees.

Before KELLY, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury found the District of Columbia liable to the estate, widow, and daughter of Lawrence Calvin Jackson in wrongful death and survival actions alleging false arrest, assault, and negligence by metropolitan police officers. Liability is not an issue on appeal. The questions pertain to damages, which totaled $120,740 upon three general verdicts: (1) Because the District's Medicaid program has paid or will pay $75,336 for medical bills of the deceased at Howard University Hospital, is the District entitled to set off against the total judgment the amount the jury awarded for medical expenses? (2) If so, can the appropriate credit be calculated by subtracting the Howard University medical bills from the total amount of the general verdicts, or must the jury first make a special finding as to medical damages? We conclude that the District is entitled to a setoff, but that special findings as to medical damages—which may or may not be represented by the hospital bills—are necessary before the proper amount can be determined. Accordingly, we must reverse the judgment and remand for a new trial on the issue of damages.

I.

The parties have agreed on the following statement of facts:

*Agreed Statement of Fact*

This is an appeal by the District of Columbia from an order of the trial court (Thompson, J.) denying the District's post-judgment motion for a credit on the judgment or, in the alternative, to alter or amend the judgment. The ground for this motion is that the judgment totalling $120,740 in favor of appellees in this wrongful death and survival action, included $75,336 in damages for which appellees and/or their decedent, had previously been compensated under the District's Medicaid Program. The District asserted that the collateral source rule was not applicable and, additionally, that appellees were not entitled to

a double recovery. It urged for those reasons that it should be given a credit against the judgment for amounts paid by the Medicaid Program.

This action was filed by Lawrence Calvin Jackson, who died on January 2, 1980, while the action was pending. Mr. Jackson alleged in his complaint that, on September 20, 1977, he was falsely arrested by officers of the Metropolitan Police Department and that the arresting officers assaulted him. He included in his complaints counts for (1) false arrest, (2) assault, (3) negligent training, and (4) libel and slander.

Following Mr. Jackson's death, his widow, Doris T. Rawlings Jackson, was named administratrix of the estate. She filed a supplemental complaint on behalf of the estate in the form of a survival action and a wrongful death action on her own behalf and on behalf of their minor daughter. She reiterated the claims in the original complaint and additionally claimed that Mr. Jackson's death resulted from assault and negligence on the part of the District. The District of Columbia, the only defendant, was sued under a *respondeat superior* theory of liability. The District, in its answer, denied any liability to appellees.

Trial to a jury commenced on May 5, 1980. On May 29, 1980, the jury returned its verdict for appellees, finding the District of Columbia liable on the false arrest, assault and negligence claims. The count for libel and slander had been voluntarily dismissed by appellees. The form of the verdicts was $78,240 in the survival action and $34,000 in favor of Doris Rawlings Jackson and $8,500 in favor of LaVette Jackson, the minor daughter of Doris Rawlings Jackson and Lawrence C. Jackson, on the wrongful death claims. Judgment against the District of Columbia was entered on these verdicts.

Mr. Jackson received extensive medical care, prior to his death, which included a kidney transplant and dialysis treatment. Appellees introduced into evidence hospital bills which totalled $75,336 for care at Howard University Hospital. These bills have been paid or will be paid by the District of Columbia Medicaid Program, with partial reimbursement from the United States.

During the trial the parties entered into a written stipulation to that effect, which was approved by the trial court and entered into the record. The stipulation provides:

It is stipulated and agreed to, by and between the Plaintiffs and the Defendant, that all of Lawrence Calvin Jackson's Howard University Hospital medical bills have been paid or will be paid by D.C. Medicaid.

It is further stipulated and agreed that the District of Columbia will submit to and be reimbursed by the Federal Government a percentage of the costs of the D.C. Medicaid payments.

In instructing the jury, pursuant to written instructions proposed by appellees, and to which the District did not object, the Court allocated the medical bills proved by appellees between the survival and wrongful death actions. The medical bills allocated to the wrongful death action were those for Mr. Jackson's last illness. Appellees' proposed Instruction "C", which was given by the trial court, and which each member of the jury had in written form during deliberations, provided:

If you shall find for the Plaintiffs, you shall take into consideration in arriving at your verdict the pecuniary loss suffered by the deceased, Lawrence C. Jackson, as a result of the injuries sustained in this case which includes the value of reasonable and necessary medical hospital services. You shall also make an award of reasonable compensation for the decedent's disability which was caused by the actions of the Defendant, District of Columbia.

In assessing the damages to which the estate of Lawrence Jackson is entitled, you may take into consideration any of the following which you believe from the evidence to have resulted from the acts of the Defendant, District of Columbia.

1. Any bodily injury sustained by Lawrence C. Jackson, and the extent and duration thereof;

2. Any effect of any such injury upon his health according to its degree and probable duration;

3. Any physical pain and suffering and mental anguish suffered by him;

4. Any inconvenience caused by the injuries and treatment;

5. Any doctor, hospital, nursing and medical expenses incurred to the extent of $59,720.00.

Appellees' proposed Instruction "D" was also adopted by the trial court and given in written form to each member of the jury for consideration during deliberations. It provided in relevant part that:

That alleged monetary loss, plus funeral expenses of $1,969.50 and medical bills of decedent's last illness to the extent of $15,616.60 are the only damages that you may award plaintiffs under the Wrongful Death Act, if you find the District of Columbia liable under that statute.

The District of Columbia contended throughout this litigation that appellees were not entitled to recover for medical bills paid under the Medicaid Program. The District urged in its Pretrial Statement and Supplemental Pretrial Statement that, as a set-off or other matter in mitigation of damages, medical bills paid under the Medicaid program were not recoverable by appellees and that bills so paid should not be admitted into evidence.[1] Prior to trial, the District filed a memorandum of law, asserting that Medicaid payments are not within the collateral source doctrine and that appellees were not entitled to a double recovery for medical care.

Appellees also filed a memorandum of law in which they contended that Medicaid payments are from a collateral source. They also contended that the question of a set-off, if any, for Medicaid should be settled by the court, following trial, stating:

[Under *Reid v. District of Columbia,* 391 A.2d 776 (D.C.App.1978) and 399 A.2d 1293 (1978)], the jury should not be informed of the fact or amount of any [Medicaid] payments; such information would tend to confuse the jury in determining a just, compensatory amount. A set-off, if any is proper, would be for the court to determine as a matter of law and not a question for the jury. The jury's sole function should be to determine a fair, full and just award. Thereafter, that award may be subject to adjustment.

At trial the District made no request that the jury verdict form reflect the dollar components which made up their final verdict.

During trial, the court denied the District's motion to exclude the medical bills from evidence, and it ruled that no comment concerning Medicaid payments could be made in front of the jury. Following entry of judgment, the District filed its motion to alter or amend the judgment or, alternatively, for a credit against the judgment in the amount paid under the Medicaid program. The court denied the motion without stating its grounds. This appeal followed.

## II.

■ A. Claiming that they are entitled to double recovery for medical expenses of the deceased—*i.e.,* both from the judgment against the District and from Medicaid—appellees invoke the common law collateral source rule in this jurisdiction: "[A]n injured person may usually recover in full from a wrongdoer regardless of anything he may get from a 'collateral source' unconnected with the wrongdoer." *Hudson v. Lazarus,* 95 U.S.App.D.C. 16, 18, 217 F.2d 344, 346 (1954) (footnote omitted); *accord, Jacobs v. H. L. Rust Co.,* D.C.App., 353 A.2d 6, 7 (1976). The rationale for the rule is that "it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tort feasor." *Adams v. Turner,* 238 F.Supp. 643, 644 (D.D.C.1965); *see Hudson,* 95 U.S.App. D.C. at 18, 217 F.2d at 346.

---

**1.** [Agreed Statement, continued] In the Pretrial Statement, the District erroneously referred to the Medicaid Program as being Medicare.

The District argues against double recovery here, contending that the trial court erred in refusing to grant the District a credit against the judgment for the medical bills paid or to be paid by Medicaid. Specifically, the District claims, first, that in the present context provisions of the federal Medicaid statute, 42 U.S.C. § 1396a(25) (1974), and regulations, 42 C.F.R. § 433.-136(3) (1980),[2] have modified the common law collateral source rule, with the result that "Medicaid recipients simply cannot keep that portion of a recovery from a tortfeasor which represents amounts previously paid by Medicaid." In the alternative, the District argues that even if federal law is not determinative, under the common law rule Medicaid payments are attributable to the District, not to a collateral source, and thus the District should not have to pay twice.

We assume, solely for the sake of argument, that, as between the District/tortfeasor and the victim, the Medicaid statute and regulations have not altered the common law collateral source rule.[3] We conclude that, under the common law rule, Medicaid is not a collateral source in this case and that the District, accordingly, is entitled to a credit for all medical bills, paid by Medicaid, to the extent included in the damage award.

■ B. The collateral source rule most commonly is applied when the source of the benefit is truly "collateral," i.e., not connected in any way with the tortfeasor.[4] A source of benefits also will be deemed collateral, however—and the victim will be entitled to both the benefit and the judgment—even when the tortfeasor has provided or contributed to those benefits, so long as the victim has contracted for the benefits.[5] For example, when the United States

2. 42 U.S.C. § 1396a(a)(25) (1974) provides:
(a) A State plan for medical assistance must—
&ast; &ast; &ast; &ast; &ast; &ast;
(25) provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of paragraph (17)(B), and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability....
42 C.F.R. § 433.136(3) (1980) provides in part: "Third Party" means any individual, entity or program that is or may be liable to pay all or part of the medical cost of injury, disease, or disability of an applicant or recipient.

3. For a discussion of the effect of the Medicaid statute on plaintiffs' rights of recovery under the common law collateral source rule—an issue on which we express no opinion—see Bennett v. Haley, 132 Ga.App. 512, 523, 208 S.E.2d 302, 311 (1974). See also Whitaker v. Talbot, 122 Ga.App. 493, 494–495, 177 S.E.2d 381, 383–84 (1970) (effect on collateral source rule of Federal Medical Recovery Act, 42 U.S.C. § 2651); Horton v. Brooks, 325 So.2d 912, 915–

16 (Miss.1976) (effect on collateral source rule of state statute governing Medicaid program).

4. In this context, the victim may retain both the benefit and the judgment even if the benefit is completely gratuitous. See, e.g., Healy v. White, 173 Conn. 438, 447, 378 A.2d 540, 546 (1977) (special education program provided by public school system); Bennett, 132 Ga.App. at 523, 208 S.E.2d at 311 (Medicaid, where tortfeasor was not connected with government); Reeves v. Gulf States Util. Co., 327 So.2d 671 (La.App.1976) (pension fund to which victim did not contribute); Werner v. Lane, 393 A.2d 1329, 1336 (Me.1978) (medical care and hospitalization provided by state); Hueper v. Goodrich, 314 N.W.2d 828, 831 (Minn.1982) (medical care provided by charity hospital); Ciminski v. SCI Corp., 90 Wash.2d 802, 807, 585 P.2d 1182, 1182–85 (1978) (en banc) (Medicare fund to which victim did not contribute); Thoreson v. Milwaukee & Suburban Trans. Co., 56 Wis.2d 231, 241–245, 201 N.W.2d 745, 751–53 (1972) (medical expenses paid by government). See also Hannah v. Haskins, 612 F.2d 373, 375 (8th Cir.1980) (assuming, in this context, that Medicaid is "collateral source").

5. A tortfeasor need not be the only contributor in order to be deemed the "source" of a benefit. The tortfeasor's role in "br[inging] into being" the fund from which the benefit derived must be substantial, however. Adams, 238 F.Supp. at 645 (tortfeasor paid insurance premiums); see Wright v. Vickaryous, 598 P.2d 490, 502 (Alaska 1979) (tortfeasor contributed to insurance premiums); Hartnett v. Riveron, 361

is the tortfeasor and the victim, as a result of the tortious injury, receives Social Security or Medicare benefits from a fund to which he or she has contributed, the federal payments are considered "collateral." [6] Similarly, when an employer is the tortfeasor and the employee-victim has received payments under a plan that can be characterized as a "fringe benefit" in lieu of wages, the payments are "collateral." [7] The rationale here "is that the plaintiff deserves any additional compensation he may receive because he has 'contracted' for it, because it is in the nature of insurance." *Overton v. United States,* 619 F.2d 1299, 1306 (8th Cir.1980) (applying Missouri law).

There is a third situation: when the tortfeasor (*e.g.,* the government or an employer) has provided benefits to protect against illness, injury, or disability, and the victim in no respect has bargained or paid for them, the tortfeasor is entitled to a credit for those benefits to the extent that they compensate for the same misfortune covered by the judgment. Courts have held credits to be available, for example, with respect to veterans' disability benefits,[8] Medicare payments from a fund to which the victim did not contribute,[9] medical care provided by the Veterans' Administration,[10] and insurance policies which were not fringe benefits of employment.[11]

---

So.2d 749, 752 (Fla.App.1978) (same). *Cf. Bradshaw v. United States,* 143 U.S.App.D.C. 344, 349 n. 12, 356, 443 F.2d 759, 765 n. 12, 771 (1971) (when only 8½ to 17 percent of benefits paid under District Disability Act came from federal government, remainder came from local government and employee contributions, and local government administered program, federal government was not source); *Ciminski,* 90 Wash.2d at 805, 585 P.2d at 1184 (tortfeasor's status as federal taxpayer did not give him direct, pecuniary interest in Medicare necessary to be considered "source").

We disagree with the suggestion in *Steckler v. United States,* 549 F.2d 1372, 1379 (10th Cir. 1977) (applying Colorado law) that courts should bifurcate their analysis of a benefit and allow a credit against the judgment for the percentage traceable to the tortfeasor, but not for the remainder. Such tracing would be an undue burden on everyone concerned. *See Bradshaw, supra; Smith v. United States,* 587 F.2d 1013, 1016 (3d Cir.1978) (applying Pennsylvania law) (rejecting *Steckler* approach).

**6.** With regard to Social Security benefits, see *Smith,* 587 F.2d at 1016; *United States v. Harue Hayashi,* 282 F.2d 599, 604 (9th Cir.1960) (applying Hawaii law); *Barnes v. United States,* 516 F.Supp. 1376, 1389 (W.D.Pa.1981) (applying Pennsylvania law); *Johnson v. United States,* 510 F.Supp. 1039, 1046 (D.Mont. 1981) (applying Montana law); *see also Jennings v. United States,* 291 F.2d 880, 887–88 (4th Cir.1961) (applying Maryland law) (Civil Service Retirement Act benefits); *United States v. Price,* 288 F.2d 448, 450–51 (4th Cir. 1961) (applying Virginia law) (same); *United States v. Brooks,* 176 F.2d 482, 485 (4th Cir. 1949) (applying North Carolina law) (National Life Insurance benefits). *Cf. Eichel v. New York C.R.R. Co.,* 375 U.S. 253, 254, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (per curiam) (since Railroad Retirement Act is equivalent of Social Security Act for railroad employees,

benefits received under the former Act are not deductible from judgment against employer railroad).

As to Medicare benefits, see *Mitchell v. Moore,* 406 So.2d 347, 351 (Ala.1981); *Powell v. Brady,* 30 Colo.App. 406, 412–414, 496 P.2d 328, 332–33 (1972), *aff'd,* 181 Colo. 218, 508 P.2d 1254 (1973); *Our Lady of Mercy Hosp. v. McIntosh,* 461 S.W.2d 377, 379 (Ky.1970); *Womack v. Travelers Ins. Co.,* 258 So.2d 562, 569 (La.App. 1972); *Ciminski,* 90 Wash.2d at 802–807, 585 P.2d at 1182–85; *Thoreson,* 56 Wis.2d at 241–245, 201 N.W.2d at 751–53.

**7.** *See Russo v. Matson Navigation Co.,* 486 F.2d 1018 (9th Cir.1973) (per curiam) (pension benefits); *Blake v. Delaware & Hudson Ry. Co.,* 484 F.2d 204, 205–07 (2d Cir.1973) (insurance required to be purchased by employer, as fringe benefit, under collective bargaining agreement); *Haughton v. Blackships, Inc.,* 462 F.2d 788, 790–91 (5th Cir.1972) (same); *Hall v. Minnesota T. Ry. Co.,* 322 F.Supp. 92, 95–97 (D.Minn.1971) (same).

**8.** *See United States v. Brown,* 348 U.S. 110, 111 n.*, 75 S.Ct. 141, 145 n.*, 99 L.Ed. 139 (1954); *United States v. Gray,* 199 F.2d 239, 244 (10th Cir.1952) (applying Colorado law); *Johnson,* 510 F.Supp. at 1046.

**9.** *See Overton,* 619 F.2d at 1305–09.

**10.** *See Feeley v. United States,* 337 F.2d 924, 926–28 (3d Cir.1964) (applying Pennsylvania law). *But see Gray,* 199 F.2d at 244.

**11.** *See Nelson v. Penn Central R.R. Co.,* 415 F.Supp. 225, 226–27 (N.D.Ohio 1976); *Thomas v. Penn Central Co.,* 379 F.Supp. 24, 25–28 (W.D.Pa.1974); *Wright,* 598 P.2d at 501–02; *Rogers v. North Western Trans. Co.,* 59 Ill. App.3d 911, 916–917, 16 Ill.Dec. 845, 850–51, 375 N.E.2d 952, 957–58 (1978); *Hartnett,* 361 So.2d at 750–52.

In sum, "[a] plaintiff may invoke the collateral source rule ... either [1] when the payment in question came from a source wholly independent of the liable party or [2] when the plaintiff may be said to have contracted for the prospect of a 'double recovery.'" *Overton,* 619 F.2d at 1307.[12] Otherwise, the rule is not available to the plaintiff.

This case falls into neither collateral source category. First, the source of the Medicaid benefit was not "wholly independent" of the wrongdoer, the District of Columbia. The District itself "brought into being," *see Adams,* 238 F.Supp. at 645, the Medicaid program in this jurisdiction. The 1965 Amendments to the Social Security Act authorize states to establish medical assistance programs if they wish to do so,[13] but the state government must take the initiative by submitting a program plan which conforms to federal requirements. The District submitted a Medicaid plan to the federal government in 1968. When the plan was approved, the District qualified for matching federal funds.[14] The federal government pays 50 percent of the cost of services provided under the D.C. Medicaid plan.[15] The District, however, is solely responsible for administering the program.[16] On these facts, we conclude that the District was the source of the Medicaid payments. *See* note 5 *supra.*

Nor do Medicaid recipients contribute to, or bargain for, the fund from which benefits are paid. *See* 42 U.S.C. § 1396b (1974). Appellees acknowledge in their brief that, in every respect, "Medicaid is a gratuitous benefit."

We conclude, therefore, that because the Medicaid benefits were not derived from a source "unconnected with" the District, *Hudson,* 95 U.S.App.D.C. at 18, 217 F.2d at 346 (*i.e.,* "wholly independent of" it, *Overton,* 619 F.2d at 1307), and the victim did not contract for those benefits, they cannot be characterized as benefits from a collateral source. The trial court accordingly erred in ruling that the District was not entitled to a credit for medical bills, paid by Medicaid, that also were included in the damage award. *See Overton,* 619 F.2d at 1305–09; *Feeley,* 337 F.2d at 926–28; *Johnson,* 510 F.Supp. at 1046.

## III.

■ Appellees contend that, whatever the merits of the collateral source issue, the District should not now receive an automatic setoff against the general verdicts for the medical bills paid by Medicaid, since it is not clear that the verdicts included the full amount of those bills. We agree. As the party seeking a setoff, the District bears the burden of showing that the amount sought to be deducted is in fact part of the verdicts. The District could have met this burden by requesting either special verdicts (itemizing the types of damages awarded) or a special finding, accompanying each of the general verdicts, as to the medical expenses awarded.[17] The jury should be in-

---

12. Some cases have suggested that a benefit from a government tortfeasor is deductible from the judgment if it comes from general government funds, but not if it comes from a "special" fund. Since these cases identify a "special" fund as one to which the victim has contributed, however, see *Smith,* 587 F.2d at 1015–16; *Price,* 288 F.2d at 450–52; *Harue Hayashi,* 282 F.2d at 603–04; *Johnson,* 510 F.Supp. at 1046, the distinction seems to be based on the idea that the victim should receive any benefit for which he or she has contracted. *See Overton,* 619 F.2d at 1308.

13. 42 U.S.C. §§ 1396 *et seq.* (1974). The District of Columbia is treated as a state under the statute. 42 C.F.R. § 430.1 (1980).

14. The federal government pays 50–83 percent of the cost of the medical services provided under state plans; the federal government's exact share is calculated according to a formula which compares the administering state's per capita income with the national average. *Id.* § 1396d(b); 42 C.F.R. § 433.10 (1980).

15. 41 Fed.Reg. 44,879–80 (1976); 45 Fed.Reg. 79,582 (1980).

16. 42 U.S.C. § 1396a(5) (1974).

17. We perceive no reason why special verdicts or findings as to medical damages could not have been called for without violating the ruling in *Reid, supra,* that precludes informing the jury of the fact or amount of Medicaid payments.

structed to make special findings whenever "the basis of the jury's determination cannot otherwise be ascertained and . . . disclosure of the correct basis will be necessary to the proper consideration by the trial court of any motion addressed to the verdict and will, by the same token, be essential to adequate judicial review." *Finkle v. Zimmerman,* 26 A.D.2d 179, 181, 271 N.Y.S.2d 820, 822 (1966); *see Safer v. Perper,* 186 U.S.App.D.C. 256, 269, 569 F.2d 87, 100 (1977); *Carruba v. Speno,* 418 S.W.2d 398, 402 (Ky.1967); *Brandt Corp. v. Warren Automatic Controls Corp.,* 37 A.D.2d 563, 322 N.Y.S.2d 291, 293 (1971) (per curiam).

The District did not request special findings, and it is not clear from the record that reasonable jurors, in awarding $120,740 in total damages, necessarily must have awarded the full amount of the medical bills to appellees. The parties contested the extent to which the hospital bills covered treatment for kidney and other injuries legally attributable to the assault by police officers, in contrast with treatment for injuries unrelated to the District's liability. The trial court accordingly instructed the jurors that they should take into consideration the value of "reasonable and necessary" medical expenses that "resulted from" the acts of the District, "to the extent of" the total amount of the bills. Reasonable jurors could have found that not all of the decedent's medical expenses were "reasonable and necessary," or that not all of these expenses "resulted from" acts attributable to the District. It is impossible to know how much in medical expenses was awarded and how it was allocated among the three general verdicts—one for the survival action and two for wrongful death. The District, therefore, has failed to show that the full sum for which it claims a credit was included in the jury's verdicts. *Compare Woodcock v. Fontana Scaffolding & Equipment Co.,* 69 Cal.2d 452, 458, 445 P.2d 881, 885, 72 Cal.Rptr. 217, 221 (1968) (en banc) (where court told jurors that they should "determine the full amount of the damages" without "subtract[ing] this other compensation claim," it was clear that jurors had not deducted workmen's compensation benefits from verdict, and credit for these benefits was granted).

We cannot order a setoff without knowing what findings formed the basis of the damage award. *See Quigley v. County of Suffolk,* 75 A.D.2d 888, 889, 428 N.Y.S.2d 46, 47 (1980) (per curiam); *Brandt Corp.,* 37 A.D.2d at 563, 322 N.Y.S.2d at 292–93; *Missouri, K. & O. Transit Lines v. Jackson,* 442 P.2d 287, 290 (Okl.1968); *St. Louis-San Francisco Railway Co. v. Tompkins,* 409 P.2d 1, 6 (Okl.1965). "If the verdict is hopelessly ambiguous, a reversal is required, although retrial may be limited to the issue of damages." *Woodcock,* 72 Cal. Rptr. at 220, 445 P.2d at 884; *see Quigley,* 75 A.D.2d at 889, 428 N.Y.S.2d at 47; *Brandt,* 37 A.D.2d at 563, 322 N.Y.S.2d at 292–93; *St. Louis-San Francisco Railway Co.,* 409 P.2d at 6.[18]

Accordingly, we reverse the judgment and remand the case for a new trial on the issue of damages:

1. If all medical expenses have been (or will be) paid by Medicaid, plaintiff-appellees shall not seek recovery of such expenses.

2. If only a portion of the medical expenses has been (or will be) paid by Medicaid, the court shall require special findings by the jury as to the amount of medical expenses awarded as part of each verdict. The court then shall allocate to each special finding the amount, if any, paid (or to be paid) by Medicaid, and shall enter a judgment deducting from the amount of each verdict the Medicaid amount so allocated. *See Reid, supra.*[19]

---

**18.** *Cf. District of Columbia v. White,* D.C.App., 442 A.2d 159, 165 (1982) (judgment reversed and case remanded for new trial where jury did not specify which of three theories of liability it relied upon, and there was insufficient evidence to support one of the three theories).

**19.** Appellees cite *Oldham v. Adkisson,* 448 S.W.2d 55 (Ky.1969), for the proposition that the District "waived the ambiguous verdict." *Oldham* is inapposite, however. In that case, the defendant, by not objecting to the language of the verdict, waived the right to challenge the court's interpretation of the verdict. *Id.* at 60.

3. If plaintiff-appellees seek to introduce medical bills paid (or to be paid) by Medicaid for a purpose other than recovery of medical expenses, *e.g.,* as evidence pertaining to the seriousness of the injuries, the trial court shall properly instruct the jury as to their limited use.[20]

*So ordered.*

KELLY, Associate Judge, concurring as to reversal:

I would reverse on the basis of the District's alternative argument, *i.e.,* that the trial court erred in refusing to grant a credit against the judgment for the medical bills paid or to be paid by Medicaid. Specifically, the District claims that in the present context provisions of the federal Medicaid Statute, 42 U.S.C. § 1396a(a)(25) (1974), and regulations, 42 C.F.R. § 433.136(3) (1980), require recovery of Medicaid funds where a tortfeasor is liable for the expense of medical care given a Medicaid recipient.

The Medicaid program, 42 U.S.C. §§ 1396 *et seq.* (1965), was enacted by Congress as an amendment to the Social Security Act. Medicaid provides free medical care in the form of public assistance to persons whose indigency qualifies them for receipt of such benefits. The costs of providing free care are divided between the federal government and participating states or the District of Columbia. Each state which chooses to have a Medicaid program is responsible for administering its own program under a state plan which conforms to federal requirements and has been approved by federal officials. *See id.* §§ 1396, 1396a. In 1967, Congress gave local authorization for the District of Columbia to develop a conforming plan. D.C.Code 1973, § 1–266, and in June of 1968, the Secretary of HEW approved the plan submitted by the District.

42 U.S.C. § 1396a(a)(25) (1974) provides:
(a) A State plan for medical assistance must—

\* \* \* \* \* \*

(25) provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of paragraph (17)(B), and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability . . . .[1]

This provision requires the states to obtain reimbursement for Medicaid payments provided to victims of negligence or other torts, where it is determined that a third

Here, the verdict is "hopelessly ambiguous" and therefore not open to interpretation. *See* *Woodcock,* 72 Cal.Rptr. at 220, 445 P.2d at 884.

20. In a case where none of the medical expense has been (or will be) paid by Medicaid, the jury need not make special findings as to the amount of medical expenses awarded as a part of each verdict unless there is some other basis for the District to claim an offset.

1. 42 U.S.C. § 1396a(a)(25) was modified in 1981. It now provides:
(a) A State plan for medical assistance must—
(25) provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of paragraph (17)(B), and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.

party is liable for the victims' medical expenses.[2] When collected, reimbursements representing third party liability are distributed to the federal government and to the state in accordance with their contributions. 42 C.F.R. § 433.154. Failure to seek reimbursement leads to the elimination of federal funds. 42 C.F.R. §§ 433.138, –.139, –.140(a)(1).[3]

42 C.F.R. § 433.136 defines "third party" as "any individual, entity or program that is or may be liable to pay all or part of the medical cost of injury, disease, or disability of an applicant or recipient." In this case the District is an "entity . . . that is liable to pay all or part of the medical cost" of appellees. Therefore, the District falls within the definition of "third party" in the circumstances here. Accordingly, the District must seek reimbursement, and appellees are not permitted a double recovery.

Appellees argue that the District is not a "third party" within the meaning of the statute and they should therefore be permitted to keep any amounts recovered which might represent Medicaid payments. I disagree. If appellees' interpretation were correct, there would be an anomalous result: District Medicaid recipients would get a double recovery in instances where, fortuitously, the District was the tortfeasor; they would receive no double recovery if another party were the tortfeasor. By requiring states to seek reimbursement or face loss of federal Medicaid funds, Congress intended to reduce the costs of Medicaid. Permitting appellees to keep the portion of the judgment which represents expenses already paid by Medicaid is contrary to that intent. The federal statute mandates that the District receive a credit on

**2.** The legislative history of § 1396a(a)(25) (1974) makes it clear that Congress intended that states actively seek reimbursement. *E.g.,* S.Rep. No. 744, 90th Cong., 1st Sess. 35, U.S. Code Cong. & Admin.News 1967, p. 2834 (Nov. 14, 1967) ("States would have to take steps to assure that the medical expenses of a person covered under the Medicaid program, which a third party had a legal obligation to pay, would not be paid, or if liability is later determined, that steps would be taken to secure reimbursement in order to reduce program costs."). *See also* H.R.Rep. No. 544, 90th Cong., 1st Sess. 123 (Aug. 7, 1967).

**3.** 42 C.F.R. § 433.138 Determining liability of third parties, provides:

The agency must take reasonable measures to determine the legal liability of third parties to pay for services under the plan.

42 C.F.R. § 433.139 Payment of claims, provides:

(a) The agency has the following options for payment of claims:

(1) It may pay the amount remaining, under the agency's payment schedule, after the amount of the third party's liability has been established. Under this method, the agency may not withhold payment for services provided to a recipient if third party liability or the amount of liability cannot be currently established or is not currently available to pay the recipient's medical expense.

(2) It may pay the full amount allowed under the agency's payment schedule for the claim and seek reimbursement from any liable third party to the limit of legal liability. If the agency chooses this option, it must seek reimbursement from the third party

within 30 days after the end of the month in which payment is made.

(b) If, after a claim is paid, the agency learns of the existence of a liable third party, it must seek reimbursement from the third party within 30 days after the end of the month it learned of the existence of the liable third party.

(c) An agency must suspend or terminate an effort to seek reimbursement from a liable third party if it determines that the effort would not be cost effective because the amount it reasonably expects to recover will be less than the cost of recovery. The State plan must—

(1)(i) Specify the threshold amount or other guideline that the agency uses in determining whether to seek reimbursement from a liable third party; or

(ii) Describe the process by which the agency determines that seeking reimbursement would not be cost effective; and

(2) Specify a dollar amount or period of time for which it will accumulate billings with respect to a particular liable third party, in making the decision whether to seek recovery.

42 C.F.R. § 433.140 FFP [Federal Financial Participation] and repayment of Federal share, provides:

(a) FFP is not available in Medicaid payments if—

(1) The agency failed to fulfill the requirements of §§ 433.138 and 433.139 with regard to establishing liability and seeking reimbursement from a third party . . . .

the judgment for medical expenses paid by Medicaid.

I do agree that Medicaid is not a collateral source and that under the majority's theory of reversal the District is likewise entitled to a credit for all bills paid by Medicaid. Were I to join that decision, however, I would not remand for a new trial on damages. According to the stipulation, the court allocated the medical expenses proved between the two causes of action. The amount of the verdicts exceeded those expenses by a comfortable margin. It seems to me unjust to fault the District for failing to request a special verdict in view of its repeated objection to the submission of the medical bills in evidence, and the appellees' insistence that the bills be introduced and the question of a setoff be decided by the court post-verdict.[4] The case should be remanded with instructions to reduce the verdicts by the amounts of the Medicaid payments.

---

4. Appellees, of course, also insisted that the medical expenses resulted from the injuries the decedent sustained in the assault.